The will in this case was admitted to probate on the 28th day of February, 1923. An application was then made to this court, on the 28th day of May, 1923, for an order compelling proof of said will in solemn form.
The testatrix died November 20th, 1922, leaving a last will and testament dated March 31st, 1920, in and by which she left all of her property, amounting to about $11,000, cash in bank, to the proponent, a grandniece. The next of kin consisted of nephews, nieces, grandnieces and grandnephews. The certificate of death shows that testatrix died at the age of one hundred and one years. That she was of this age is doubtful. In one place a witness swears that she thought she was about ninety-five; but, in any event, she had reached a great age. She spent a great many years in California, where she was employed as a cook, and, by thrift, had saved in the neighborhood of $15,000. She made one trip from California to New Jersey about thirty years before her death, and returned. She then came to Bayonne, about twenty-four years before her death, and lived with relatives and friends, several in number, and then came to live with Mrs. Farley, a niece, where she lived for, I think, seven years. During her stay with Mrs. Farley she paid her $13 a month for her board and lodging, and made two gifts to her of $1,000 each, and a check for $2,000 upon which she has presented a claim against the estate. Some friction arose between the testatrix and Mrs. Farley. On October 22d 1919, she came to live with Mrs. Somers under the following circumstances: Mrs. Farley spoke to Mrs. Somers about taking the testatrix. Mrs. Somers demurred because of her two children, and asked her sister to take her, and her sister was *Page 635 
in no position to do so; and then Mrs. Somers said, "well, I will take the poor soul," or words to that effect, and she went to live with her, paying her $13 a month until some time after the will in question was made. After she had been with Mrs. Somers for a month or more, then being possessed of about $11,000, she made a will, giving legacies to her nieces, nephews, grandnieces and grandnephews, giving to five of them $100 each; to Mrs. Sullivan, the mother of Mrs. Somers, $300, and to several, one dollar each. In this will she gave one dollar to her niece Mrs. Farley, because, she states, "for several years last past I have given her money from time to time, and paid her every month, money in payment for my board due to her, and I owe her no money at this time." The residue of the estate she diveded into ten equal parts, giving one-tenth to each of various grandnephews and grandnieces, among which were included Mrs. Somers and Rita Somers, a daughter of Mrs. Somers, and to John Sullivan, Richard Sullivan and William Sullivan, children of Mrs. Sullivan above mentioned. Thus, within a month after coming to the proponent, she gave in the residue to Mrs. Somers and her child Rita and Mrs. Sullivan's children five-tenths or one-half thereof.
The present will was drawn some five months after the testatrix came to live with proponent.
It is properly conceded that testatrix, at the time of making the will, was of sound and disposing mind. The only point made is that the burden of proof is cast upon the proponent to negative the presumption of undue influence, and that she has failed. I cannot subscribe to this.
The evidence shows that this lady, the testatrix, despite her years, possessed considerable will-power much greater than that of Mrs. Somers. In December, 1921, about twenty months after the will was made, she said to Mrs. Somers that she was afraid her will might be contested, and she insisted on turning over all her moneys to Mrs. Somers. To this Mrs. Somers demurred, but she replied that "she knew more about the world than Mrs. Somers, and that they might contest her will," and insisted upon giving it to her. Mr. Roberson testifies *Page 636 
that the testatrix had told him that some of her relatives intended to contest her will, and she wanted to give this money to the proponent; and Mrs. Somers says that Mrs. Jones had remarked to the testatrix that there would be a contest. This, Mrs. Jones denies. Accordingly, on December 8th, 1921, testatrix drew two drafts from the bank, one for $450 for her own use, and the other for $11,406.41 in favor of the proponent, which closed the account.
She continued to live with Mrs. Somers after making the will and after the giving of the money, until her death, receiving services from Mrs. Somers and her mother, Mrs. Sullivan. Prior to, and after the making of this will, some of these relatives visited the testatrix, and she was in a position, if she was dissatisfied, to change her domicile in the same manner that she had changed from Mrs. Farley. It is testified by some of the relatives that they called and were denied admittance. Mrs. Somers denies that she ever refused admittance to any of the relatives, and if anyone says they called and were not admitted, she must have been out. One witness I think, Mrs. Jones, testified that when she called, Mrs. Somers was continually around her so that she could not talk privately to the testatrix except when Mrs. Somers went into another room to attend to her babies. This is the only thing which contained a suggestion that Mrs. Somers did not desire the relatives to talk with the testatrix privately. Mrs. Somers did not deny this testimony of Mrs. Jones. But, taking it all in all. Mrs. Jones and Mrs. Somers were friendly, and nothing much can be urged against the fact that she remained in the room with her. No other relative who visited her gave like testimony.
While Mrs. Somers believed that the testatrix intended to make her will leaving all of her property to her, she, apparently, did not see the will until after the testatrix's death. Mr. Roberson says that after the will was executed he took it and put it in his safe.
The testimony is quite clear that Mrs. Somers had nothing to do with securing a lawyer to draw the will. The testimony of Miss Fannie Morris, secretary of Mr. VanBuskirk (who *Page 637 
drew former wills), is that she was requested, in March, 1920, to go up to Miss O'Brien's house to draw another will, but she was busy and said she would call later, and the next day she was informed that her services were not required. This indicates that, in the first instance, testatrix sent word to Mr. VanBuskirk's office that she desired to draw a will, and, in the meantime, Monsignor Egan called to see her and discussed with her the matter of the drawing of a will with her, and called in Judge Roberson.
I can see nothing in the case that indicates the exercise of undue influence, and I think Mrs. Somers has met the burden of proof, even if cast upon her, both from the fact that I think that the will-power of the testatrix was stronger, and that Mrs. Somers could not induce her to make a will against her wish; and second, that the will was probably due to love and affection which the old lady acquired for Mrs. Somers by reason of the kind treatment, care and attention which she received from her, which is not evidence of undue influence. Fritz v. Turner, 46 N.J. Eq. 515,
and cases cited; In re Brengel's Will, 85 N.J. Eq. 487;affirmed, Id. 599, and cases cited on p. 495; In reCooper's Will, 75 N.J. Eq. 179; affirmed, 76 N.J. Eq. 614;Schuchhardt v. Schuchhardt, 62 N.J. Eq. 710; In re Mannion'sEstate, 86 N.J. Eq. 232.
It is unnecessary to comment on the conduct of the testatrix as to the reasons for making a gift of practically all of her estate some twenty months after the making of the will. Her act then had no relation to her situation when she made the will, beyond showing that her affection for the proponent continued.
 I will advise a decree sustaining the will. *Page 638