† Curtis, *Petitioner for Partition, versus* Curtis *& als.*

An heir apparent, who releases all his present and future claim and interest in his father's estate, with a covenant, that neither he nor any one through him, shall ever claim any right to the same, which release is made with the knowledge and consent of his father, and there is no fraud on the part of the grantee, is precluded from setting up, afterwards, title to any part of the estate, either as heir or devisee.

On Report, Hathaway J. presiding.

Petition for Partition. Jacob Curtis, jr. pleaded that the petitioner had no interest, title, or seizin in the land described in the petition.

The petitioner and the respondents were the children of Jacob Curtis, deceased.

The title of Jacob to the land described in the petition appeared by the copies of deeds in the case.

By the will of Jacob, made in March, 1848, his personal, and one half of his real estate, were devised to his son Jacob, jr.; and the other half to his other children, five in number.

Thomas R., one of his children, died before the testator without issue.

The respondent, Jacob, jr., produced a deed of quitclaim from the petitioner, dated in Aug., 1848, acknowledged and recorded, releasing to him, his heirs, executors, administrators and assigns, "all the estate, right, title, interest, claim and demand whatsoever, both at law and equity, which the said John Curtis (petitioner,) now has or hereafter can have, either by will or descent, or otherwise; in, to, or out of, all and singular the lands, tenements, hereditaments of my father, Jacob Curtis, senior, of said Hampden. To have and to hold the same together with all the privileges and appurtenances thereunto belonging to the said Jacob Curtis, jr., his heirs and assigns, forever, so that neither I, the said John Curtis, my heirs or assigns, or any other person, persons in trust for me or them, or in my or their name or names, or in the name, right or stead of any of them, shall, will, can or may by any ways or means whatsoever hereafter claim, have,

challenge or demand any right, title, or interest, property, claim and demand of, in, to, or out of the aforesaid premises or their appurtenances, or to any part thereof forever."

On this deed was indorsed the assent and approval of Jacob Curtis, senior.

The Court were authorised to render a legal judgment thereon.

*Knowles & Briggs*, for the respondents, argued that the petitioner had no rights in the estate either as heir or legatee, and cited *Boynton* v. *Hubbard*, 7 Mass. 112; *Fitch & al.* v. *Fitch*, 8 Pick. 480; *Trull & ux.* v. *Eastman*, 3 Met. 121.

*J. Godfrey*, for petitioner.

RICE, J. — Jacob Curtis, sen'r, on the 28th day of March, 1848, being the father of six children, then living, disposed of all his estate real and personal by will. He devised all his personal estate and one undivided half of all his real estate to Jacob Curtis, jr., with whom he appears to have lived. The other half of his real estate he devised in equal proportions to his five remaining children, viz., John, Jeremiah, Thomas R., Sarah and Eliza.

On the 12th day of August, 1848, John Curtis, the petitioner and one of the five children above named, in consideration of two hundred dollars, paid by Jacob Curtis, jr., conveyed by deed of quitclaim, "all the estate, right, title, interest, claim and demand whatsoever, both at law and in equity, which the said John Curtis now has, or hereafter can have, either by will, or descent or otherwise, in, to, or out of all and singular the lands, tenements, hereditaments of my father, Jacob Curtis, sen'r, of said Hampden." This deed contains a full covenant of non-claim on the part of the grantor, his heirs and assigns; and upon the deed is the following memorandum signed by Jacob Curtis, sen'r, and witnessed, to wit; — I, Jacob Curtis, sen'r, give my assent and approval to the above deed."

The deed was entered of record August 31, 1848.

Thomas R. Curtis, one of the legatees above named, deceased in August, 1852, leaving no issue. The testator died in Sept. 1852, and his will was duly proved and allowed in probate court.

By the decease of Thomas R. without issue, before the death of his father, the testator, his legacy, being equal to one tenth part of the real estate of the testator, lapsed, and there being no residuary clause in the will, was undisposed of thereby, and consequently, on the decease of the testator, descended, under our statute of distribution, in equal proportions to all the children of the testator then living, including Jacob, jr.

The rights of the petitioner at that time, independent of his deed above referred to, would stand thus; he took as legatee, under the will, one tenth part of the real estate of the testator, $= \frac{5}{50}$. He inherited as heir at law one fifth of the lapsed legacy of Thomas R., which was undisposed of by the will, which was $\frac{1}{5}$ of $\frac{1}{10} = \frac{1}{50}$, making his entire interest six fiftieths of all the real estate of the testator.

Such would be his rights in the estate were it not for his deed, by which it is contended he has divested himself of all his interest therein, both as legatee and heir.

It is laid down by Lord Coke, Co. Lit. 265, *a*, when a son releases in the life of his father, the release is void because he hath no right at all at the time of the release made, but all the right was at that time in the father; but after the decease of the father the son shall enter into the land against his own release.

But if there be a warranty annexed to the release then the son shall be bound, for albeit the release cannot bar the right for the cause aforesaid, yet the warranty may rebut and bar him and his heirs of a future right which was not in him at that time; and the reason wherefore the warranty shall bar the future right is for avoiding circuity of action, which is not favored in law.

There are two reasons why sales of expectant estates by heirs should be discountenanced; one that it opens the

door to taking undue advantage of an heir in distressed and necessitous circumstances; the other is founded on public policy, in order to prevent an heir from shaking off his father's authority, and feeding his extravagance by disposing of the family estate. Sugden on Vendors, 370.

It was decided in *Boynton* v. *Hubbard,* 7 Mass. 112, that a contract made by an heir, to convey, on the death of his ancestor, a certain undivided part of what shall come to the heir by descent, distribution, or devise, is a fraud upon the ancestor, productive of public mischief, and void as well at law as in equity.

The doctrines of this case, in the broad terms in which they are laid down by the learned Judge who delivered the opinion of the Court, cannot, it is believed, be sustained by authority, but must be received with qualifications.

In *Fitch* v. *Fitch,* 8 Pick. 480, it was held that a covenant by an heir expectant, that he will convey the estate which shall come to him by descent or otherwise, is valid, if made with the consent of the ancestor, and for a sufficient consideration, and without advantage being taken of the covenantor.

In *Trull* v. *Eastman & ux.,* 3 Met. it was decided that a release by an heir apparent, of his estate in expectancy, with a covenant of non-claim, is, if made fairly, and with the consent of the ancestor, a bar to the releasor's claim thereto, by descent or devise, after his ancestor's death.

Such is also the rule in equity. The whole doctrine of courts of equity with respect to expectant heirs and reversioners, and others in like predicament, assumes that one party is defenceless, and exposed to the demands of the other under the pressure of necessity. It assumes also that there is a direct or implied fraud upon the parent or other ancestor, who from ignorance of the transaction is misled into a false confidence in the disposition of his property. Hence it should seem that one material qualification of the doctrine is the existence of such ignorance. If, therefore, the transaction has been fully made known, at the time, to

the parent or other person standing *in loco parentis*, and is not objected to by him, the extraordinary protection generally afforded in cases of this sort by courts of equity, will be withdrawn. *A fortiori* it will be withdrawn if the transaction is expressly sanctioned and adopted by such parent, or person *in loco parentis*. *King* v. *Hamlet*, 2 Myl. & K. 455; 1 Story's Eq. § 339.

In the case at bar the testator was connusant of the whole transaction, and gave it his express approval. There is no suggestion that fraud was practiced on the part of the grantee, nor that any undue advantage was taken of the grantor. But, on the contrary, so far as appears, it was a family arrangement, deliberately and understandingly entered into by the parties, by which the petitioner obtained a full equivalent for all the prospective rights which he relinquished. To permit him now to repudiate that arrangement, would be to enable him to practice a fraud upon others, rather than to relieve him from an unconscionable contract.

*Petition dismissed, with costs for defendants.*