RYNO'S EXECUTOR, appellant, and RYNO'S ADMINISTRA-
TOR, respondent.

1. Where probate of a married woman's will is granted, limited to her separate estate, and a grant of administration *cæterorum* issues to the husband, both the letters testamentary and of administration are valid and consistent with each other, and there may be a question for a court of construction, whether certain property in controversy is included in the probate or covered by the grant of administration.

2. But there cannot be two legal representatives of the same decedent, one claiming under general letters testamentary, the other under general letters of administration, both granted by the same tribunal having full jurisdiction in the premises. Such claims are totally inconsistent and irreconcilable, and cannot both be valid.

3. So long as a probate remains unrevoked, the seal of the Ordinary cannot be contradicted; neither can evidence be admitted to impeach it in a temporal court.

4. If the probate of a will is irregular or voidable for any cause, the remedy is by appeal to the Ordinary, or by proceeding for the revocation of the letters.

5. By a grant of probate, the power of the surrogate is exhausted and his jurisdiction over the subject matter at an end. His decree, until reversed, is both conclusive and final. A subsequent grant by him of general letters of administration respecting the same property, is absolutely void, and confers no rights upon the administrator.

6. Consent of counsel cannot confer jurisdiction, neither can it warrant a decree in a matter dehors the record, especially in the absence of parties who have a right to be heard thereon.

This case is reported in 11 *C. E. Green* 161.

*Mr. Gilbert Collins,* for appellant.

*Mr. J. A. Blair,* for respondent.

The opinion of the court was delivered by
GREEN, J.

Sarah C. Ryno, a married woman, became entitled, during coverture, under the will of her uncle, Hartman Vreeland, to a distributive share of his residuary estate. She died in May, 1869, before the legacy was paid, or any steps taken by her

husband to reduce it to possession. A short time before her death she executed a will, by which she bequeathed all her personal property to her mother, Lucinda Vreeland, for life, and after her death, to her sisters. The will was admitted to probate by the surrogate of the county of Hudson, in May, 1869, and letters testamentary issued to Cornelius Vreeland, the executor therein named. In June, 1871, more than two years afterwards, the surrogate of the same county granted administration of the estate of Sarah C. Ryno to her husband, Addis E. Ryno. Counter-claims for the payment of the legacy being made by both parties, the executors of Hartman Vreeland filed a bill of interpleader, for the purpose of ascertaining, by the decree of the Court of Chancery, whether Cornelius Vreeland, the executor of Sarah C. Ryno, or Addis E. Ryno, her husband and administrator, was entitled to receive her share of her uncle's residuary estate. Both defendants answered, admitting the allegations of the bill and setting up their counter-claims to the money. A formal decree was taken by consent, with a reference to a master to ascertain and report which of the defendants is entitled to receive the legacy. The master reported that, in his opinion, the legacy or distributive share should be paid to the executor of the wife. Exception to the report was taken by the administrator, and upon the hearing the exception was sustained, and a decree made that the money be paid by the complainants to the defendant Addis E. Ryno. From this decree an appeal was taken to this court.

The only question presented for consideration by the pleadings in this cause is, which of the contending parties, the executor or the administrator, is the legal representative of the wife, and entitled, as such, to administer upon her estate and to reduce to possession her choses in action. It is not the case of a wife having a separate estate, where probate of her will is granted, limited to the property over which she has the disposing power, and where a grant of administration *cæterorum* issues to the husband. In such case, both the letters testamentary and of administration, are valid and consistent with

each other, and there may be a question for a court of construction to decide, whether certain property, the subject matter in controversy, is included in the probate or covered by the grant of administration. But here there are two parties, each claiming to be the legal representative of the wife, one holding general letters testamentary, the other general letters of administration, both granted by the same tribunal having full jurisdiction in the premises. Such claims are totally inconsistent and irreconcilable, and cannot both be valid.

All the books lay it down as a legal consequence of the exclusive jurisdiction of the ecclesiastical courts in granting probate and administration, that the sentence pronounced in the exercise of such exclusive jurisdiction, should be conclusive evidence of the right determined. The probate of this will was granted immediately after the death of the wife, by the officer upon whom the law has conferred the exclusive power of granting probate and administration. It was a judicial act of a tribunal having competent authority, and is conclusive until repealed. So long as a probate remains unrevoked, the seal of the Ordinary cannot be contradicted; neither can evidence be admitted to impeach it in a temporal court. *Toller on Executors* 76; 1 *Williams on Executors* 450; 4 *Burns' Eccl. Law* 209.

The same principle is affirmed and carried to its legitimate results in a late case in our own courts. In *Quidort's Adm'r* v. *Pergeaux*, 3 *C. E. Green* 477, the Chancellor says: "The granting administration is exclusively with the Ordinary and his surrogates. The grant of administration constitutes the person to whom it is granted, the administrator, whether rightfully or wrongly granted. Like the acts of all other regularly constituted tribunals, the acts of the surrogate cannot be impeached collaterally; they can only be reviewed by appeal. The only question that can be made is, whether he had jurisdiction. If the supposed intestate were not dead, or if letters lawfully granted to some one else were in existence, the grant would be void."

So universal and well settled in its application is this prin-ciple, that it has been decided that payments of money by an executor upon probate of a forged will, is a discharge to the debtor of the decedent, notwithstanding the probate be after-wards declared void and administration be granted to the intestate's next of kin, for if the executor had brought an action against the debtor, the latter could not have contro-verted the title of the executor so long as the probate was un-repealed, and the debtor was not obliged to wait for a suit when no defence could be made against it. *Allen* v. *Dundas,* 3 *T. R.* 125 ; *Peeble's case,* 15 *Serg. & Rawle* 42.

If the probate of the will were irregular or voidable for any cause, the remedy of the husband was by appeal to the Ordi-nary, or by proceeding for the revocation of the letters. But two years after the grant of probate, when the time limited by law for an appeal had expired, the grant of administration was made by the surrogate, in direct contravention of his previous judicial sentence affirming the validity of the will *in granting the probate,* and this without notice to the executor, or order upon him to show cause why his letters should not be revoked. He might, with equal propriety, now grant letters to the next of kin of the wife, or to a creditor, or any other person having a colorable title thereto.

By the grant of probate, the power of the surrogate was ex-hausted and his jurisdiction over the subject matter at an end. His decree, until reversed, was both conclusive and final. The subsequent grant of administration was absolutely void, and conferred no right upon the administrator to prosecute this suit.

This result is reached without reference to the effect of the act of 1864, and leaves undecided the question argued by counsel, both in this court and in the Court of Chancery, as to the ultimate disposal of the fund. The probate of the sur-rogate does not decide upon or affect the rights of disposal. This question is not raised by the pleadings in the cause, and the consent of counsel can neither confer jurisdiction nor warrant a decree not authorized by the record, especially in the absence of parties who have a right to be heard on the

question. The fund must be paid by the complainant to the executor of the wife, to be administered and disposed of according to law, and the decree of the Court of Chancery be reversed, with costs of the appeal to be paid by the respondent.

Decree unanimously reversed.