82 N.J. Super. 251 (1964)
197 A.2d 406
SAMUEL E. CASTERNOVIA AND DOMINICK CASTERNOVIA, PLAINTIFFS-APPELLANTS,
v.
JOSEPH CASTERNOVIA, MARY CASTERNOVIA AND IRENE CASTERNOVIA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 23, 1963.
Decided February 10, 1964.
*252 Before Judges GAULKIN, SULLIVAN and LEWIS.
Mr. Irwin Weinberg argued the cause for appellants (Messrs. Weinberg & Bohrod, attorneys).
Mr. Vincent M. Mangino argued the cause for respondents (Messrs. Grosso, Beck & Mangino, attorneys).
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiffs Samuel E. Casternovia and Dominick Casternovia (brothers) appeal from a summary judgment against them entered by the Chancery Division of the Superior Court. Their suit was against a brother, Joseph Casternovia, and his wife Mary, and Irene Casternovia, mother of the three brothers.
Plaintiffs, by their original complaint, aver that their brother and his wife unduly influenced their mother to convey to them (Joseph and Mary) premises known as 266 and 268 Morris Avenue, Springfield, New Jersey. They contend the transfer was contrary to a previous indication by their mother, and father during his lifetime, that their estates would be ultimately divided equally among the three children. It is charged that Joseph and Mary prejudicially influenced Irene Casternovia by repeating to her scandalous, *253 false and malicious tales concerning personal and family affairs of Samuel and Dominick. The complaint seeks to set aside the conveyance and to impress the property with a trust for the benefit of the three sons.
On defendants' motion for summary judgment, the court had before it the pleadings and depositions, together with affidavits of all principal parties, and the additional supporting affidavits hereafter mentioned, from which it appears:
The subject property had been owned by Irene Casternovia and her husband as tenants by the entireties. Upon her husband's death in 1947, she became sole owner of the fee simple title. Joseph had been taking care of his mother, and he apparently was her favorite son.
On January 26, 1961, at which time Irene Casternovia was 82 years of age, she conveyed said lands and premises, valued at $75,000, to her son Joseph and his wife Mary for a consideration of $35,000. The latter sum was evidenced and secured by a ten-year non-interest bearing purchase money mortgage, payable in $100 monthly installments. Also, the mother reserved the right to live in a four-room apartment in the premises "free as long as the mortgage was there." The grantor was not impoverished by said conveyance since she had bank deposits of approximately $9,000 in addition to the aforesaid mortgage asset. In consummating the transaction she had the benefit of the professional advice and services of Joseph L. Magrino, Esq., a member of the New Jersey Bar, who speaks her native language and who represented her and various members of the Casternovia family in legal matters since 1936.
When plaintiffs were informed about the conveyance, they attempted to persuade their mother to nullify the transaction, and, when their efforts proved fruitless, they engaged counsel. Magrino, upon receiving a letter from plaintiffs' attorney indicating the probability of litigation, arranged with Joseph and his mother for a meeting in his office on November 28, 1961, at which time the son was asked if he would reconvey the property if his mother requested it. He replied, "Yes, if *254 she wants the property back, I want my mother to stay happy and I don't want her to die over anything that might happen here." There was present at the conference Humbert Berardi, an official court interpreter of the Italian language, who questioned the mother. In his affidavit relative to the interview, he stated:
"* * * I was amazed at her sharp and alert mind and memory. I then showed her a deed of conveyance to Joseph Casternovia and Mary Ann Casternovia, his wife, dated July 26, 1961, and asked her if she had signed it, to which she answered affirmatively. I then proceeded to read the instrument and to translate it to Irene Casternovia in Italian. I did the same with the bond and mortgage for $35,000.00 which had been executed by Joseph Casternovia and Mary Ann Casternovia, his wife, to Irene Casternovia, on July 26, 1961. When I had completed this, I asked Irene Casternovia if my translation of the papers contained everything she had requested of her attorney, Mr. Magrino, to which her answer was in the affirmative. Then I asked her if she wished to make any changes at this time, to which she answered `No.' Then I asked her if she wanted to cancel and rescind the papers and take her property back from Joseph Casternovia and his wife and cancel the mortgage on said property, and her answer was definitely and positively `No.' * * *
It is my observation that Irene Casternovia is a person of sound and alert mental faculties, who knows how to transact her business intelligently, and I am particularly and definitely satisfied that her transactions with her attorney on July 26, 1961 were completely understood, and that they were not made under duress with any reservations or promises, and that she is capable of handling her private affairs."
The mother's unalterable position was reaffirmed in her deposition:
"Q. I am asking you, weren't you led to understand ____ A. No, I didn't want to change it. What I did was well done.
Q. When Mr. Berardi read to you the documents in November of 1961, didn't he tell you if you were not satisfied, you could change it? A. Yes.
Q. So you were led to understand you could change those papers if you were not satisfied. A. No, sir. Everything was satisfactory, that which had been done.
Q. But you were led to understand that if you changed your mind that you could change. A. They did make me understand that. But I didn't want to change it because I was satisfied with what I had done.
*255 Q. But you were told you could change it if you were not satisfied. A. I didn't want to change it.
Q. But you were told you could. A. Yes. They did tell me that."
Dr. Gabriel J. Llull, the family physician, stated in affidavit form that, based upon his examinations of Irene Casternovia, he was satisfied "she is in complete possession of her mental faculties and is aware of her acts and consequences thereof."
The depositional testimony of the mother, which was lengthy and exacting (translated from Italian to English through an interpreter), leaves no room for any doubt as to her mental acuity, understanding and objective thinking. She specifically denied and resisted plaintiffs' claim and refused to nullify what she had done. As to undue influence, the court specifically found, "the overwhelming evidence by way of depositions and affidavits indicates that no undue influence was at all practiced upon Irene Casternovia, the grantor."
Contemporaneously with defendants' application for summary judgment, the trial court entertained a motion by plaintiffs to amend their complaint. It was unopposed. While the proffered amendment to the second count alleged that Irene Casternovia "is incompetent to manage and control said property and assets," counsel made it clear during the course of his argument on the motion that "her capacity to make the deal" was challenged and not her "competency." The remaining amendment alleged that Joseph and Mary wilfully, intentionally and maliciously interfered with plaintiffs' economic rights by "causing the defendant, Irene Casternovia, to cut off the plaintiffs from the probable economic benefits they would have enjoyed as the heirs at law of the said Irene Casternovia."
Although it may be true that the trial judge made no actual ruling as to the proposed amendments to the pleadings, they were considered in the light of the material before him. It is implicit in the record that if plaintiffs' motion had been *256 formally granted it would not have altered the court's conclusion that defendants were entitled to summary judgment.
It is conceded by plaintiffs' counsel that there is no reported decision in this State wherein damages were sought to be recovered in a tort action for malicious interference with an expected gift. Our courts, however, have frequently dealt with various types of malicious interference with prospective economic advantages in the realm of business transactions.
Appellants direct our attention to Dean Prosser's treatise on the law of torts wherein, after observing that the earlier cases have denied recovery for interference with an expected gift or legacy under a will, the author commented, "There is no essential reason for refusing to protect such non-commercial expectancies, at least where there is a strong probability that they would have been realized." Prosser, Torts, § 107, p. 747 (1955). See also Restatement of Torts, § 912, comment f; Annotation, "Frustration of Gift  Actionability," 98 A.L.R. 474 (1935); Annotation, "Interference as to Wills," 11 A.L.R.2d 808 (1950). However, note the comment in 11 A.L.R.2d, at page 810, "In no instance, apparently, has any question concerning the sufficiency of an expectancy of the sort indicated, as the basis of litigation, been presented to a court prior to the death of testator or intestate." This case presents that question.
It seems to us that the ratio decidendi of the decisional law giving recognition to causes of action for the protection of an expectant donative interest is "strong probability" that the anticipated gift or legacy would have been received but for wrongful interference, which necessarily subsumes the death or mental incompetency of the donor at the time the action is instituted. We hold that, if the donor is alive and competent, no such action as asserted here will lie.
The language employed by the court in Holt v. Holt, 232 N.C. 497, 500-501, 61 S.E.2d 448, 451-452 (Sup. Ct. 1950), is applicable to the facts at bar:
"A child possesses no interest whatever in the property of a living parent. He has a mere intangible hope of succession. [citation] *257 His right to inherit the property of his parent does not even exist during the lifetime of the latter. [citations] Such right arises on the parent's death, and entitles the child to take as heir or distributee nothing except the undevised property left by the deceased parent. [citations]
In so far as his children are concerned, a parent has an absolute right to dispose of his property by gift or otherwise as he pleases. He may make an unequal distribution of his property among his children with or without reason. These things being true, a child has no standing at law or in equity either before or after the death of his parent to attack a conveyance by the parent as being without consideration, or in deprivation of his right of inheritance. [citations]
When a person is induced by fraud or undue influence to make a conveyance of his property, a cause of action arises in his favor, entitling him, at his election, either to sue to have the conveyance set aside, or to sue to recover the damages for the pecuniary injury inflicted upon him by the wrong. [citations] But no cause of action arises in such case in favor of the child of the person making the conveyance for the very simple reason that the child has no interest in the property conveyed and consequently suffers no legal wrong as a result of the conveyance. [citations]"
In the final analysis, plaintiffs' litigious endeavors in the case sub judice are directed toward compelling their mother against her will to divide her estate equally among her three children. The law rejects the validity of any such claim. It is well settled in this State that every citizen of full age and sound mind has the right to make such disposition of property by will or deed as he or she in the exercise of individual judgment may deem fit. Note LeGendre v. Goodridge, 46 N.J. Eq. 419, 428 (Ch. 1890); Fretz v. Roth, 70 N.J. Eq. 764, 767 (E. & A. 1906); Kerlin v. Maher, 139 N.J. Eq. 566, 567 (Ch. 1947).
We agree with the conclusion of the trial court that plaintiffs did not have a legal status to sustain the pending action. Irene Casternovia was a party defendant in the proceedings and was living at the time of the hearing on October 5, 1962. The record clearly establishes her capacity to consummate the challenged transaction, its voluntariness and its express ratification by her.
The summary judgment entered by the trial court is affirmed.