**Richard HARMON**

v.

**Harold C. HARMON et ux.**

Supreme Judicial Court of Maine.

Aug. 23, 1979.

Bennett, Kelly & Zimmerman, P. A. by Graydon G. Stevens (orally), Peter H. Jacobs, Portland, for plaintiff.

Preti & Flaherty by Arthur A. Peabody (orally), Robert F. Preti, Portland, for defendants.

Before WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

Somewhere near the frontier of the expanding field of law relating to tortious interference with an advantageous relationship we encounter the legal issue which is paramount in this appeal.

By a complaint entered November 21, 1977, in Superior Court in Cumberland County the Plaintiff, Richard Harmon, asserted that the Defendants, Harold C. Harmon and Virginia S. Harmon (who are the Plaintiff's brother and brother's wife) had by fraud and undue influence induced the Plaintiff's mother, Josephine F. Harmon, while she was 87 years old and in ill health, to transfer to the Defendants valuable property. By her 1976 will and by her more recent statements the mother had indicated her intention that the Plaintiff son should receive at least a one-half interest in this property. Thus, this transfer effectively disinherited the Plaintiff son. The mother, it appears, is still living.

Upon the Defendants' motion the Superior Court dismissed the complaint upon the grounds (a) that the complaint fails to state a claim upon which relief can be granted and (b) that the Plaintiff son lacked standing to proceed against the Defendant son and the latter's wife.

The Plaintiff son has appealed to this Court from that order of dismissal.

We sustain his appeal.

All well-pleaded material allegations of the complaint are taken as admitted for purposes of a motion to dismiss for failure to state a claim upon which relief may be granted or for want of standing. *See National Hearing Aid Centers, Inc. v. Smith,* Me., 376 A.2d 456 (1977); *Rodway v. Wiswall,* Me., 267 A.2d 374 (1970); *Warren v. Waterville Urban Renewal Auth.,* Me., 259 A.2d 364 (1969); *Richards v. Ellis,* Me., 233 A.2d 37 (1967).

Thus, the issue before us is whether, prior to the mother's death, a son and expectant legatee can maintain an action in

tort against a third party for wrongful interference with an intended legacy to the son.

In *Cyr v. Cote*, Me., 396 A.2d 1013 (1979) we recently considered a similar question. There it was after the testator's death that certain legatees under his will commenced their action, alleging that, but for the defendants' fraud and undue influence upon the testator, they would have received the property which by such tortious conduct the Defendants obtained as an intervivos gift. In determining whether the expectancy of receiving a bequest was something which the law would protect, we had occasion to examine *Perkins v. Pendleton*, 90 Me. 166, 38 A. 96 (1897). There it was held that a plaintiff, employed by a company which had the right to terminate his employment at will, could bring an action against defendants who unlawfully caused the company to discharge the plaintiff. Relying upon *Perkins*, we recognized in *Cyr v. Cote, supra*, an action for the wrongful interference with an expected legacy or gift under a will.

In both *Perkins* and the instant case, the injured parties had only an expectation of future gain. In both, the third parties, i. e., the company and the testator, were under no legal obligation to the plaintiffs. Both suits in substance alleged that but for the tortious conduct of the defendants, the plaintiffs would have reaped economic benefits. In short, in all material respects, the instant case falls well within the controlling principles of *Perkins v. Pendleton*. Nor can we perceive any countervailing policy reason not to extend *Perkins v. Pendleton*, which recognized an action for the wrongful interference with the expectation of a future business relationship, into the area of decedents' estates. *Id.* at 1018.

The question presented by the appeal now before us goes one step further. Here we are called upon to decide whether the factual difference between *Cyr*, where the testator had died, and the present action, where the testatrix is still alive, leads to a different legal conclusion concerning whether such an action may currently be maintained. Some courts have held that this distinction is dispositive,[1] but we conclude that under the facts of this case the difference is not a crucial one.

In *Cyr*, the interest we sought to protect was the *expectation*, and not the *certainty*, that the legatees would have received a future benefit under the will. If there had been no undue influence the testator, prior to death, could still have disinherited them or bequeathed the property to another person. Nevertheless, the wrongful conduct deprived the plaintiffs of the possibility that the testator would not have changed his mind, absent the undue influence.

Once the will has been executed an expectancy has been created in the legatee. If the legatee is injured due to some wrongful conduct on the part of a third party against the prospective testator, such act

1. *See Nelson v. Nelson*, 31 Colo.App. 63, 497 P.2d 1284 (1972); *Casternovia v. Casternovia*, 82 N.J.Super. 251, 197 A.2d 406 (1964); *Morgan v. King*, 312 Ky. 792, 229 S.W.2d 976 (1950). These opinions have either relied heavily on earlier decisions which refused to recognize that an action could be commenced following the death of the ancestor, *see Casternovia v. Casternovia, supra* 197 A.2d at 409–410; or, recognizing this right, without thorough analysis, they have held that there was no right prior to the ancestor's death, *see Morgan v. King, supra* 229 S.W.2d at 978; *Nelson v. Nelson, supra* 497 P.2d at 1286.

We do not here have occasion to address the rule that an expectant heir may not maintain an action to set aside a transfer during the life of the ancestor or impose a constructive trust over it, unless the incompetency of the ancestor is shown and the expectant heir acts as guardian in litem. In such cases, reported elsewhere, the crucial issue often was the competency of the ancestor. *See Marcaccio v. Marcaccio*, 75 R.I. 288, 65 A.2d 720 (1949) (standing issue treated as subsidiary to competency question); *Dafoe v. Dafoe*, 160 Neb. 145, 69 N.W.2d 700 (1955) (competency issue was focus of most of opinion). The question has also been addressed in dicta in other decisions, such as *Willoughby v. Trevisonno*, 202 Md. 442, 97 A.2d 307 (1953) (appellant found to have contingent property interest through deed, but no standing as expectant heir alone).

must necessarily occur within the life of the testator. The injury at this point is complete. The problem then becomes the valuation of the chance of benefit that has been lost. On this basis there may be recovery for loss of prospects falling considerably short of certainty. W. Prosser, *Law of Torts* 951 n. 75 (4th ed. 1971).

We find support for the precedent set by *Cyr* in a review of the historical foundations for that precedent.

The law initially proved most ready to protect commercial expectancies, such as that of entering into or continuing a business relation with another. *See Restatement of Torts* § 766 (1939). Very early cases protected a merchant whose customers were being driven away and a churchman whose donors were being harassed. *See* W. Prosser, *Law of Torts* § 130, p. 949 (4th ed. 1971)

Prospective or potential business relations have been protected from wrongful interference. *Taylor v. Pratt*, 135 Me. 282, 284, 195 A. 205 (1937).

■ Furthermore, it has become a settled rule in the United States that the expectancy of future contractual relations, such as the prospect of obtaining employment or employees, or the opportunity of obtaining customers, will be protected by the law from wrongful interference. *See Lumley v. Gye*, 2 E & B 216 (1853); *Huskie v. Griffin*, 75 N.H. 345, 74 A. 595 (1909); *Bacon v. St. Paul Union Stockyards Co.*, 161 Minn. 522, 201 N.W. 326 (1924); *Jersey City Printing Co. v. Cassidy*, 63 N.J.Eq. 759, 53 A. 230 (1902); *Tuttle v. Buck*, 107 Minn. 145, 119 N.W. 946 (1909). *See generally* Stevens, "Interference with Economic Relations— Some Aspects of the Turmoil in the Intentional Torts," 12 *Osgoode Hall L.J.* 595 (1974); *Developments in the Law—Competitive Torts*, 77 *Harv.L.Rev.* 888, 961–63 (1964). Tort liability for damages is the well established remedy in this situation. *See* Green, "Relational Interests", 29 *Ill. L.Rev.* 1041 (1935). The development of the

prima facie tort remedy has to a large degree paralleled the developments discussed above. *See generally* G. Alexander, *Commercial·Torts* 335 *et seq.* (1973).

Maine has long recognized this legal right to non-interference with an expectancy of future gain where an employee has no right to continued employment, but nevertheless has an expectation that his employment will continue. *Perkins v. Pendleton, supra.* The expectancy was sufficient to create a cause of action in the employee even though the employer was under no legal obligation to continue the employee on the payroll. Valuation of that expectancy might, of course, present serious evidentiary difficulties but those difficulties did not destroy the right to be protected from wrongful interference. Neither was the cause of action which provided a remedy for tortious interference lost to the injured party.

If the law protects a person from interference with an opportunity to receive a benefit by entering into contractual relations in the future, the same protection should be accorded to a person's opportunity to receive a benefit as a prospective legatee. The uncertainty attendant upon the expectancy is equivalent. Neither the employee nor the prospective legatee has any enforceable right to his likely benefit.

The courts in *Allen v. Leybourne*, 190 So.2d 825 (Fla.1966) and *Bohannon v. Wachovia Bank & Trust Co.*, 210 N.C. 679, 188 S.E. 390 (1936) relied heavily on this analogy in finding a cause of action based upon wrongful interference with an expectancy in a decedent's estate, just as did our Court in *Cyr*.

If the plaintiff can recover against the defendant for the malicious and wrongful interference with the making of a contract, we see no good reason why he cannot recover for the malicious and wrongful interference with the making of a will. It is true that such a cause of action may be difficult to prove—but that does not touch the existence of the cause of action, but only its establishment. *Bo-*

*hannon v. Wachovia Bank & Trust Co., supra* 188 S.E. at 394.

The law has, indeed, in the past also proved willing to protect non-commercial interests in a variety of contexts. Dean Prosser has commented:

On this basis the earlier cases held that recovery would be denied for interference with an expected gift or a legacy under a will, even though the defendant's motives were unworthy and he had resorted to fraudulent means, because the testator might have changed his mind. There is no essential reason for refusing to protect such non-commercial expectancies, at least where there is a strong probability that they would have been realized. . .

*The problem appears in reality to be one of satisfactory proof that the loss has been suffered, instead of the existence of a ground to tort liability.* W. Prosser, *Law of Torts* 950–951 (4th ed. 1971). (emphasis added).

Recognition of such a cause of action was made in the *Restatement of Torts* § 870 (1939) which declares the imposition of liability for the intended consequences of any tortious act. Comment (b), Illustration 2, is enlightening:

A, who is zealous in the cause of labor, is about to make a gift to B, a college when C, for the purpose of preventing the gift, falsely represents that the president of B is opposed to collective bargaining. As a result, A refuses to make the gift which otherwise he would have made. B is entitled to maintain an action of tort against C. *Restatement of Torts* § 870 (1939).

The parallel between our present factual setting and this illustration is striking indeed. The prospective donor could elect to rescind or affirm the transaction at any time. Furthermore, he was under no obligation to make a gift and had not yet completed it.

Assume, for example, that an alumnus of a college had made an unenforceable pledge to be carried out over ten years. Wrongful interference with the college's expectancy would warrant a remedy of damages for loss of the value of the expectancy. Similarly, in the case before us wrongful interference with an expectancy under the will demands a remedy at this time, notwithstanding the chance that the testamentary gift might never be completed.

Likewise, the expectancy of a beneficiary in the proceeds of an insurance policy upon the life of another is an interest which the courts are ready to protect against the wrongful interference of a third person. *Mitchell v. Langley*, 143 Ga. 827, 85 S.E. 1050 (1915); *Munroe v. Beggs*, 91 Kan. 701, 139 P. 422 (1914); *Daugherty v. Daugherty*, 152 Ky. 732, 154 S.W. 9 (1913); *see also* Evans, "Torts to Expectancies in Decedents' Estates" 93 *U.Pa.L.Rev.* 187 (1944).

Such liability in tort is recognized notwithstanding that clearly the beneficiary's interest includes no vested right, but is a "mere" expectancy. *See* 44 Am.Jur.2d *Insurance* § 1738 (1939) and cases cited at note 18 therein. The issue is not whether the interest is vested or expectant; rather the issue is whether it is legally protected so that intentional and wrongful interference causing damage to the plaintiff gives rise to liability in tort. *Ross v. Wright*, 286 Mass. 269, 190 N.E. 514 at 515 (1934).

■ We conclude that where a person can prove that, but for the tortious interference of another, he would in all likelihood have received a gift or a specific profit from a transaction, he is entitled to recover for the damages thereby done to him. *Restatement (Second) of Torts* § 912, comment f at 486; *see also Woodbury v. Woodbury*, 141 Mass. 329, 5 N.E. 275 (1886); *cf. Ross v. Wright, supra*. We apply this rule to the case before us where allegedly the Defendant son and his wife have tortiously interfered with the Plaintiff son's expectation that under his mother's will he would receive a substantial portion of her estate.

That an expectant legatee or an expectant heir has an interest of immediate eco-

nomic value is implicit in the decisions holding that the expectant heir may effectively convey his interest for valuable consideration. *See Curtis v. Curtis*, 40 Me. 24, 27 (1855); *Hooker v. Hooker*, 130 Conn. 41, 32 A.2d 68, 73 (1943). Protection of this interest from tortious interference comports with recognition of this valuable right.

In early cases several courts denied any remedy for tortious interference with one's expectancy of benefit from an ancestor or a testator.[2] Our holding, however, in *Cyr* put our Court in step with those courts which in recent years have developed a considerable body of precedent for the proposition that when, following the death of an ancestor or testator, one establishes that the fraud or undue influence of another has interfered with his expectancy of benefit from that ancestor or testator, he is entitled to relief. Sometimes the remedy has been to impose a constructive trust or to set aside the transfer; at other times damages have been found to be an appropriate remedy. *See Hegarty v. Hegarty*, 52 F.Supp. 296 (D.Mass.1943); *Bohannon v. Wachovia Bank & Trust Co.*, 210 N.C. 679, 188 S.E. 390 (1936); *Latham v. Father Divine*, 299 N.Y. 22, 85 N.E.2d 168 (1949); *Monach v. Koslowski*, 322 Mass. 466, 78 N.E.2d 4 (1948); *Allen v. Leybourne*, 190 So.2d 825 (Fla.1966); *see generally* Henderson, "Mistake and Fraud in Wills—Part I: A Comparative Analysis of Existing Law," 47 *Boston U.L.Rev.* 302 (1967); Comment, 1 *DePaul L.Rev.* 253 (1952); Comment, 19 *U.Kansas City L.Rev.* 78 (1951); Evans, "Torts to Expectancies in Decedents' Estates," 93 *U.Pa.L.Rev.* 187 (1944); G. Palmer, *The Law of Restitution* ch. 20 (1978); V. A. Scott, *The Law of Trusts* § 488 *et seq.* (3d ed. 1967).

In the case before us, we go one step further than we did in *Cyr*. Here we recognize that one may proceed to enforce this liability, grounded in tort, before the death of the prospective testatrix occurs, even as we have seen that the victim of tortious interference with a contract of employment or with a policy of life insurance has been permitted to proceed.

There are several considerations which strongly favor according the Plaintiff brother an early day in court, notwithstanding the ambulatory nature of the mother's will and the voidable nature of a trust arrangement. These include (a) the availability of witnesses to the allegedly tortious acts while their memories are relatively fresh, (b) the present availability of relevant exhibits, and (c) especially the prospect that the court may gain the testimony of the parties' aged mother, which testimony may determine the outcome here.[3]

While delaying the adjudication until the mother's death could solidify the Plaintiff's position as allegedly a victim of fraud or undue influence, the delay might mean that important evidence would be denied the court. *See Ziehl v. Maine Nat'l Bank*, Me., 383 A.2d 1364, 1368 (1978); *Gannett v. Old Colony Trust Co.*, 155 Me. 248, 251, 153 A.2d 122 (1959).

It should be noted that the claim of the Plaintiff son is to a loss of his expectancy, not to a loss of the actual property of his mother.

Having concluded that the Plaintiff son has a justiciable interest upon which he may found this action, it is clear that he has standing to proceed with this action. Therefore, the order of dismissal was in error.

We need not, and do not, address the problems of proof of damages, once liability in tort is established. *See* W. Prosser, *Law*

**2.** *See Lewis v. Corbin*, 195 Mass. 520, 81 N.E. 248 (1907); *Hall v. Hall*, 91 Conn. 514, 100 A. 441 (1917); *Cunningham v. Edward*, 52 Ohio App. 61, 3 N.E.2d 58 (1936).

**3.** *Cf. Randlett v. Randlett*, Me., 401 A.2d 1008, 1012 (1979) (preservation of important evidence a factor in sanctioning declaratory relief in a controversy as to obligation of a husband's estate to make payments to wife under a separation agreement in the event the wife should survive him).

of Torts 951 (4th ed. 1971). Neither do we here consider the other forms relief may take. *See Restatement of Restitution* §§ 133, 184 (1937). Those are matters which should first have the attention of the trial court if and when the Plaintiff establishes by a preponderance of the evidence that he is entitled to relief.

The entry, therefore, will be:

Appeal sustained.

Order of dismissal vacated.

Remanded for further proceedings consistent with the opinion herein.

McKUSICK, C. J., and POMEROY, J., did not sit.