936 A.2d 1015 (2007)
397 N.J. Super. 231
Felix M. GARRUTO and Francisco Garruto, Plaintiffs-Appellants
v.
Lorraine CANNICI, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 2007.
Decided December 21, 2007.
*1016 Donald J. Rinaldi, Nutley, argued the cause for appellants (DiBiasi & Rinaldi, attorneys; Thomas S. DiBiasi, on the brief).
Clinton H. Drymon, Dover, argued the cause for respondent.
Before Judges PAYNE, SAPP-PETERSON and MESSANO.
The opinion of the court was delivered by
PAYNE, J.A.D.
Approximately one year after the death of Mary Garruto on October 30, 2004, and the admission of her will to probate and issuance of letters testamentary to decedent's niece, defendant Lorraine Cannici, on November 3, 2004, Mary's brothers, plaintiffs Felix and Francisco Garruto, filed a two-count action in the Law Division alleging the commission of fraud in the inducement by Cannici, and claiming that as the result of the fraud, they were denied their proper shares of the estate of their sister. Following discovery, Cannici moved for summary judgment on the brothers' fraud claim, arguing that in depositions and answers to interrogatories, the brothers had stated unequivocally that no fraudulent acts had taken place. The motion judge construed the complaint to set forth a cause of action for tortious interference with an expected inheritance, perpetrated by way of fraud and, ruling in Cannici's favor, he determined that the brothers were unable to support their claims factually, and that Felix's self-serving assertions, contained in certifications opposing summary judgment, did not create a question of material fact sufficient to defeat Cannici's motion. The judge additionally found that the brothers' "cause of action sounds in the nature of a challenge to the Will by reason of undue influence more properly and appropriately brought before a Probate Court consistent with the rules of court." The present appeal followed.
On appeal, the brothers[1] present the following arguments:

*1017 I. There Is Ample Evidence From Which A Fact Finder Can Conclude That There Has Been A Tortious Interference With An Expected Inheritance.
II. Summary Judgment Should Not Have Been Granted Because Of The Favorable Inferences To Be Drawn From The Evidence.
In response, Cannici argues that (1) the brothers failed to mount a challenge to the probate proceedings; (2) their challenge to the will by means of a tort action was untimely pursuant to R. 4:85-1; (3) the absence of a challenge to the will precludes collateral attack; and (4) no evidence supports the brothers' claims of fraud, and therefore summary judgment was properly granted. We affirm.
We understand from the record that Mary was born in 1943 and died on October 30, 2004. Her parents pre-deceased her, she never married, and she had no children. When she died, her brothers were her next of kin.
Mary was a long-time employee of the Internal Revenue Service. Although, at some point, she had acquired a home from a "former boyfriend," for fifty-six years Mary maintained a residence with her two brothers in the family home. According to Felix, he and Mary had a close and loving relationship for "at least" fifty-six out of her sixty-two years of life. Also according to Felix, Mary had stated on many occasions that she would leave him approximately twenty percent of her estate. However, the record suggests that, at some point prior to the execution of her will, Mary and her two brothers fiercely argued, and Mary, in Cannici's words, "was thrown out" of the family home. Mary's will was executed on October 31, 2002, in anticipation of a trip to Italy by Mary, a long-time male friend, Cannici, and Cannici's family. The will did not name Felix as a beneficiary, and provided only a small bequest of $5,000 to Francisco, a brother that Cannici characterized as possessing "a more submissive personality." A significant part of Mary's estate passed to Cannici, a woman of the same age as Mary who maintained a close friendship with her.[2]
In August 2003, almost a year after her return from Europe, Mary was diagnosed as suffering from a malignant brain tumor and, although surgery was performed, the cancer had metastasized to her lungs and elsewhere, causing Mary's death in 2004. In April 2004, prior to her death but during her last illness, Mary gave written instructions to Cannici to transfer $7,000 to Felix and $5,000 to Francisco. Neither claims that she was incompetent to do so.
The present suit was instituted on October 11, 2005, approximately one year after Mary's will had been admitted to probate and letters testamentary had been issued. At that point, no caveats to the will had been filed, and some distributions had been made. Although the suit named Cannici only in her individual capacity, further distributions and payments from *1018 the estate were stayed pending resolution of this matter.
In Count I of the complaint, the brothers alleged:
5. It appears from the face of the Will, and the facts known by plaintiffs, that defendant, Lorraine Cannici, caused the decedent, Mary B. Garruto, to sign the Will as the result of fraud upon the said Mary B. Garruto.
6. It appears, on the face of the Will, that there is an unnatural disposition of the Estate of Mary B. Garruto, and that the plaintiffs have been denied a share of the Estate of their sister as the result of fraud.
The allegations of the Second Count of the complaint, which also alleged fraud in very similar terms, are no more specific than those contained in the First Count.
In support of the brothers' claims, Felix asserted, essentially, that because Mary lived with the brothers in the family home for fifty-six out of her sixty-two years and owed him both love and respect, he had a reasonable expectation of the twenty percent of Mary's estate that Mary had promised him, and that he would have received the bequest but for Cannici's fraud. However, when Felix was asked in a deposition given in the matter[3] what was "wrong" with the will, he responded, variously, that he didn't believe that, in her mental state, Mary was capable of signing it; that his absence from the disposition of property "wasn't logical"; and that that Mary "was not thinking straight when she made that Will." Yet, Felix acknowledged that he did not know Mary's mental condition at the time that the will was executed. When asked what was meant by the use of "fraud" in the complaint, Felix responded:
A ". . . what we are saying is that she was not mentally capable to prepare a Will, so that legal document is not legal. To me, that's fraud.
Felix stated further:
A I'm not accusing Lorraine or anyone else. I'm saying my sister (Mary) was not capable. I want to make that clear.
The deposition continued with the following exchange:
Q . . . You've already said that Lorraine didn't commit a fraud as far as you know.
A Right.
Q And the complaint says that fraud appears on the face of the Will. Again, we touched upon this and it has nothing to do with Lorraine Cannici. . . . It's just the mental problems that might have impacted.
A Right, and she could have been easily influenced.
* * *
Q . . . You're not alleging a fraud against Lorraine?
A That's correct.
* * *
Q [After reading the bequests in the will] Is there any reason why these bequests are improper or wrong or illegal?
A I can't answer that. I don't know.
* * *
A I looked the Will over and I guess I disagreed with it.
Q Why?
A Because . . . I was the brother and I was entitled to more.
* * *
Q [Referring to the complaint] . . . It says that the Will was signed because of fraudulent pressure; is that correct?
A No.

*1019 Q It says that Lorraine Cannici caused the decedent . . . to sign the Will because of fraud. What was that for?
A I don't know. I don't know.
Q And it also says, "on the face of the will, there is an unnatural disposition of the estate and the plaintiffs have been denied a share as the result of fraud." . . . There was fraud committed by Lorraine Cannici. What was that fraud?
A I don't know.
Q Again, in the Second Count . . . you state that there was fraud committed by Lorraine Cannici or that the actions of Lorraine were fraudulent causing damage to the plaintiffs. Do you know what that fraud was?
A No I don't.
* * *
Q Okay, the word "fraud," what's the meaning of the word?
A I don't know.
In answers to interrogatories, Felix replied, "unknown at this time," when asked whether Lorraine violated any standard and whether she committed an intentional tort. Again, Felix failed to specify any act of fraud on Lorraine's part.
However, after Cannici's motion for summary judgment was filed, Felix submitted a certification that stated:
14. In my deposition, I was asked whether or not I believed the defendant committed fraud. In hindsight I can see that I was confused in answering this question especially since I was thinking in terms of her Tortious Interference with my expectation of receiving a benefit under my late sister's will. In [e]ffect, her Tortious Interference, I submit to the court, was in fact perpetrating a fraud on me and was an attempt to defraud me out of an inheritance.
In that certification, Felix additionally reiterated his expectation of a bequest of twenty percent of Mary's estate; described the love existing between siblings; claimed that Cannici interfered with his expectation, resulting in a will that was "bizarre"; alleged that Cannici's interference was motivated by her dislike for him and determination that he was "overbearing"; and stated that Cannici developed a confidential relationship with Mary and was instrumental in introducing her to the lawyer who drafted the will.[4] Felix also stated that, while weakened by her brain tumor and in deteriorating health (a claim that is not supported by medical or other evidence), Cannici exerted unspecified undue influence over Mary, through fraud, to draft the will as she did, and that another member of the Cannici family had, at an unspecified time, falsely told Mary that Felix had been instrumental in eliminating Mary's inheritance from her mother  a statement whose falsity would have been evident to Mary, because she in fact had received approximately $24,000.

I.
In opposing summary judgment and on appeal, Cannici contends that the brothers' action for tortious interference with an expectation of an inheritance, allegedly premised upon undue influence by means of fraud, is barred by the brothers' failure to file a timely challenge the will as required by R. 4:85-1, which provides:
If a will has been probated by the Surrogate's Court or letters testamentary . . . have been issued, any person aggrieved by that action may, upon the filing of a complaint setting forth the *1020 basis for the relief sought, obtain an order requiring the personal representative . . . to show cause why the probate should not be set aside or modified or the grant of letters of appointment vacated, provided, however, the complaint is filed within four months after probate. . . .
In argument before the motion judge, plaintiffs' counsel responded to Cannici's position by stating that, because of the alleged difficulty Felix experienced in dealing with the "disrespect" evidenced by his exclusion from Mary's will, he did not determine to challenge Mary's testamentary dispositions until the requisite time for filing that challenge to the probate proceeding had passed. Counsel also acknowledged his assistance, after summary judgment had been filed, in reinterpreting plaintiffs' complaint to suggest tortious interference with an expected inheritance by means of undue influence through acts of fraud, committed upon a weakened testator and accomplished through a confidential relationship, and in focusing the most favorable light upon Felix's prior denials of any factual basis for claims of fraud on the part of Cannici.
When asked by the court to explain the difference between the undue influence alleged as a basis for plaintiffs' tort claim and the undue influence that would support a caveat to a will, counsel stated that if he had been approached in a timely fashion, "certainly, I would have filed that caveat," and that prior to an unreported Chancery Division decision in In the Matter of the Estate of Mechanic, Civil Action No. BER-P-208-03, 2005 WL 975763 (Ch. Div.2005), plaintiffs' claim would have been forfeited. However, counsel argued that Mechanic's recognition of an independent tort claim served to revive plaintiffs' opportunity to challenge the will's testamentary dispositions.
In Mechanic, the Chancery judge declined to grant summary judgment on a claim of tortious interference with an inheritance that was coupled with will challenges premised upon undue influence. He noted that the viability of the cause of action was "far more problematic" than the other will challenges, but concluded that the cause of action had been recognized in Casternovia v. Casternovia, 82 N.J.Super. 251, 197 A.2d 406 (App.Div.1964).
In Casternovia, we considered a claim of tortious interference with a prospective inheritance[5] by means of undue influence, filed during the lifetime of the testator. We affirmed the order of summary judgment entered against plaintiffs in the Chancery Division, noting the recognition, elsewhere, of a cause of action for tortious interference with an expected gift or legacy under a will upon evidence of a "strong probability" that the expectancy would have been fulfilled but for the wrongful interference, but the absence of any precedent permitting institution of a suit setting forth that cause of action prior to the death of the testator or intestate. Id. at 256, 197 A.2d 406. Determining that death or mental incompetency constituted a condition precedent to such litigation, we concluded that plaintiffs' action was legally unsustainable, holding that "if the donor is alive and competent, no such action as asserted here will lie." Ibid. Notably, we did not specifically recognize a cause of action for tortious interference with a prospective bequest, and we did not consider the procedural issue raised in the present *1021 case by plaintiffs' failure to challenge Mary's will in the probate proceeding.
Addressing an issue that is novel in this State, we now determine that, although an independent cause of action for tortious interference with an expected inheritance may be recognized in other circumstances,[6] it is barred when, as here, plaintiffs have failed to pursue their adequate remedy[7] in probate proceedings of which they received timely notice. We are persuaded that to hold otherwise would "play havoc with traditional probate law," James A. Fassold, Tortious Interference with Expectancy of Inheritance: New Tort, New Traps, 36 Arizona Attorney 26, 30-31 (January 2000), without achieving any compensating advantage in the just and timely administration of estates. New Jersey's probate law recognizes the general authority of the Chancery Division, Probate Part, over "all controversies respecting wills, trusts and estates, and full authority over the accounts of fiduciaries, and also authority over all other matters and things as are submitted to its determination under [Title 3B]," N.J.S.A. 3B:2-2; see also N.J.S.A. 3B:2-3 (jurisdiction of Superior Court over surrogate's proceedings), and specifically designates the manner in which challenges to a will shall be instituted. See N.J.S.A. 3B:2-4 (directing commencement by order to show cause). Probate procedures are further articulated in the New Jersey Court Rules, which enumerate in R. 4:82 those matters in which the surrogate's court may not act, including those instances in which a caveat has been filed and provide, in Rules 4:83 to 4:85, the methods of proceeding. By this means, challenges to a will based, as in this case, upon undue influence through fraud can proceed under established precedent setting forth the relevant factors for consideration, as well as the quantum and burdens of proof that pertain specifically to this subject area. See, e.g., Haynes v. First Nat'l State Bank of N.J., 87 N.J. 163, 432 A.2d 890 (1981); In re Estate of Lehner, 70 N.J. 434, 360 A.2d 383 (1976); In re Hopper, 9 N.J. 280, 88 A.2d 193 (1952); In re Probate of Last Will of Catelli, 361 N.J.Super. 478, 825 A.2d 1209 (App.Div.2003); Matter of Will *1022 of Liebl, 260 N.J.Super. 519, 617 A.2d 266 (App.Div.1992), certif. denied, 133 N.J. 432, 627 A.2d 1138 (1993). To permit a collateral attack premised upon tortious interference with an expected inheritance would, in these circumstances, unnecessarily prolong the settlement of estates, introduce the possibility of inconsistent judgments, and require consideration of a body of law governed by standards different from those applicable in a probate context. See Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 750-52, 563 A.2d 31 (1989). Moreover, to permit collateral attack on this basis would be inconsistent with established precedent precluding such an attack on a valid probate judgment recognizing the validity of a will. See Pope v. Kingsley, 40 N.J. 168, 172-73, 191 A.2d 33 (1963) (precluding collateral attack on surrogate's judgment by Acting Director of Division of Taxation); Ryno's Ex'r v. Ryno's Adm'r, 27 N.J. Eq. 522, 524 (E. & A. 1875) (recognizing principle that the acts of the surrogate cannot be impeached collaterally); Gray v. Cholodenko, 34 N.J.Super. 190, 194, 111 A.2d 918 (App.Div.1955) (when decree had been issued by Surrogate's Court, equitable jurisdiction will not be exercised by the Superior Court "where the attack is against a judgment of a court of this State and an adequate remedy can be had in that court.").
In reaching this conclusion, we are in accord with a multitude of courts that have held on various grounds that a claim for tortious interference with an anticipated inheritance is unavailable when an adequate probate remedy exists. See generally, George L. Blum, Action for Tortious Interference with Bequest as Precluded by Will Contest Remedy, 18 A.L.R. 5th 211. 224-27 (1994); Sonja A. Soehnel, Liability in Damages for Interference with Expected Inheritance or Gift, 22 A.L.R.4th 1229, 1235-37 (1983); see also, e.g., Wilson v. Fritschy, 132 N.M. 785, 55 P.3d 997, 1002 (Ct.App.2002); Jackson v. Kelly, 345 Ark. 151, 44 S.W.3d 328, 332-33 (2001); Geduldig v. Posner, 129 Md.App. 490, 743 A.2d 247, 257 (Ct.Sp.App.1999); Hauck v. Seright, 290 Mont. 309, 964 P.2d 749, 753 (1998); Minton v. Sackett, 671 N.E.2d 160, 162 (Ind.App.1996); Firestone v. Galbreath, 895 F.Supp. 917, 926 (S.D.Ohio 1995) (Ohio law); Moore v. Graybeal, 843 F.2d 706, 711 (3d Cir.1988) (Del. law); McMullin v. Borgers, 761 S.W.2d 718, 719-20 (Mo.Ct.App.1988); Robinson v. First State Bank of Monticello, 97 Ill.2d 174, 73 Ill.Dec. 428, 454 N.E.2d 288, 293-94 (1983); DeWitt v. Duce, 408 So.2d 216, 217 (Fla.1981); Benedict v. Smith, 34 Conn.Sup. 63, 376 A.2d 774, 775-76 (1977); Johnson v. Stevenson, 269 N.C. 200, 152 S.E.2d 214, 217 (1967); McGregor v. McGregor, 101 F.Supp. 848, 849-50 (D.Colo.1951), aff'd, 201 F.2d 528, 529 (10th Cir.1953) (La. law); Allen v. Lovell's Adm'x, 303 Ky. 238, 197 S.W.2d 424, 425-26 (1946); Brignati v. Medenwald, 315 Mass. 636, 53 N.E.2d 673, 674 (1944); Axe v. Wilson, 150 Kan. 794, 96 P.2d 880, 885-88 (1939).
In the present case, plaintiffs never filed a challenge, let alone a timely challenge, to Mary's will in the Probate Part as required by R. 4:85-1. For the reasons that we have previously stated, we decline to permit plaintiffs to avoid the carefully crafted procedures of the Probate Part rules by filing their duplicative tort action in the Law Division.

II.
We are further satisfied, having viewed the evidence presented under the standards established by Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995) and Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. *1023 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998), that the motion judge correctly determined that plaintiffs' complaint is factually unsustainable. While plaintiffs have alleged undue influence through fraud on Cannici's part, they have advanced no facts in support of those claims. Their reliance on the respect due Felix because of his status and on a prior, close sibling relationship, later distanced by anger, does not suffice in this regard, nor does plaintiffs' reliance on the buzz words of probate practiceundue influence, diminished capacity, and confidential relationshipin the absence of an evidential foundation for their use.
Accordingly, the order of summary judgment entered against plaintiffs is affirmed.
NOTES
[1] At oral argument, it was confirmed that appellate counsel represents both brothers. However, the brief submitted on their behalf focuses solely on the relationship between plaintiff, Felix, and decedent, Mary. Proofs in the Law Division appear to have been similarly limited. For that reason, our discussion of the facts will be limited to Felix's view, which is all that has been presented to us.
[2] The will provided specific bequests of $1,000 to a niece, Marjorie Shaefer; $1,000 to a nephew Ralph Castellano; $5,000 to a sister, Theresa Castellano; $5,000 to brother Francisco Garruto; and $25,000 to a friend, Joseph DeFrank. Thirty percent of the remainder was bequeathed to Cannici; thirty percent to a niece, Virginia Bonora; fifteen percent to a niece, Janet Rose; fifteen percent to a niece, Marion Bergenfeld; and ten percent to a nephew, Michael Mastriani.
[3] The record contains only fragmentary excerpts from Felix's deposition.
[4] No factual basis for this claim appears in the record. Moreover, Cannici has testified in deposition, without contradiction, that she was unaware of the will until some time after Mary was hospitalized.
[5] Although the plaintiffs' motion to amend their complaint to assert the claim was pending at the time that summary judgment was granted, it was considered by the Chancery Division judge and discussed by us on appeal.
[6] The tort is recognized in the Restatement (Second) of Torts, § 774B (1979), which states:

One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.
It has been suggested that utilization of the tort remedy may be appropriate when a will contest will not accomplish the purposes of the challenger, such as when (1) an intended beneficiary is not related to the testator or named in a prior instrument; (2) there is no guarantee that the testator's intended disposition will take the contested will's place; (3) intestacy prevents an intended disposition; (4) the assets pass to a revocable trust or otherwise outside of the reach of the probate court; or (5) depletion has occurred through inter vivos transfers. See Diane J. Klein, A Disappointed Yankee in Connecticut (or Nearby) Probate Court: Tortious Interference with Expectation of InheritanceA Survey with Analysis of State Approaches in the First, Second, and Third Circuits, 66 U.Pitt. L.Rev. 235, 238-39 (2004). See also DeWitt v. Duce, 408 So.2d 216, 219 (Fla.1981) (discussing cases in which tort remedy was allowed because of inadequacy of relief in probate court). Although almost one-half of the states recognize the tort in some form, Klein, supra, 66 U.Pitt. L.Rev. at 240 n. 10, the present appeal does not require our delineation of the circumstances, if any, in which the tort should be recognized in New Jersey.
[7] We decline to find the absence of the ability to obtain punitive damages (unsought in the present matter) to present sufficient grounds for allowing an otherwise duplicative tort action, choosing to compare the relief available in the probate court with what the plaintiff reasonably expected prior to the alleged interference.