Schuchhardt *v.* Schuchhardt.

JOHN SCHUCHHARDT et al., appellants,

*v.*

CHARLES SCHUCHHARDT et al., respondents.

[Filed June 6th, 1901.]

1. Upon a *caveat* against the admission of a will to probate, caveators petitioned the orphans court to certify into the circuit court the questions raised pursuant to section 19 of the "Act respecting orphans courts and relating to the powers and duty of the ordinary and the orphans courts and surrogates," approved March 27th, 1874. *Gen. Stat p. 2359.* That act had been superseded by the act of the same title, approved June 14th, 1898. *P. L. of 1898 p. 715.* The provisions of the latter act in respect to certifying such questions to the circuit court being in all respects like those of the former act, and the procedure and practice in the cause being in conformity with the act in force—*Held,* that a decree made thereon is not invalid because the authority for the proceeding was miscited.

2. Upon an appeal from a decree denying probate upon the finding of a jury that the contested writing was not the will of testator, because it was the product of undue influence, heard upon the evidence which was before the jury, their verdict will induce and require careful scrutiny before reaching a result not in accord therewith, but will have no other effect.

3. The burden of establishing the influence which is "undue," rests on those who assert it. Mere possession of influence and opportunity and motive to exert it, will not suffice. It must appear either directly or by justifiable inference from facts proved that the influence was exerted and operated to dominate testator and coerce him to make a disposition of his property which he would not otherwise have made.

4. When undue influence is claimed to be established by inference from certain facts proved, and, upon all the facts proved, an equally justifiable inference may be drawn that the will executed was what testator would have made under the circumstances, the burden on contestants is not supported.

*Mr. James A. Gordon,* for the appellants.

*Mr. Horace L. Allen,* for the respondents.

MAGIE, ORDINARY.

The appeal in this case is from a decree of the orphans court of the county of Hudson, made June 8th, 1900, refusing to admit

Schuchhardt *v.* Schuchhardt.

to probate a paper-writing purporting to be the last will and testament of George Schuchhardt, deceased.

It appears by the transcript that the paper-writing in question was offered for probate on February 6th, 1900, by John Schuchhardt and John S. Scheffling, who were the executors named therein, and that Kate Schuchhardt, the widow of the deceased, and Charles Schuchhardt, one of his sons, filed *caveats* against its admission to probate and petitioned the orphans court to certify into the circuit court of that county the questions which were thereby raised, which petition was granted. ·

The petition of the caveators to certify the matter to the circuit court was declared therein to be made under section 19 of the act entitled "An act respecting orphans courts and relating to the powers and duties of the ordinary and the orphans courts and surrogates" [Revision], approved March 27th, 1874. *Gen. Stat. p. 2359.* The act thus appealed to had been superseded at the time the petition was presented by the act of the same title, approved June 14th, 1898. *P. L. of 1898 p. 715.* For although the latter act contained no express repealer of the former act, yet it evinced a plain legislative intent that it was to take the place of the former act, and to govern the procedure and practice of the courts to which it applied. By sections 18 and 19 of the latter act provisions are made for certifying such questions into the circuit court and for the return by the circuit court of its proceedings thereon, similar in all respects to the provisions of the former act. Since the course of the procedure in the orphans court and the circuit court, disclosed by the transcript, was clearly within the provisions of the latter act, and the practice adopted was that prescribed thereby, a decree made thereon should not be held invalid for a mere error in the citation of the authority for the proceeding.

The transcript shows that the circuit court certified to the orphans court that an issue had been framed by the circuit court and tried before a jury, and that the jury had found that George Schuchhardt, deceased, signed, published and declared the paper-writing offered for probate as his last will and testament, and that at the time said deceased was of sound and disposing mind, memory and understanding, sufficient to understand and declare

it; but the jury also found that the execution of the paper-writing in question was procured by undue influence and that it was not, in fact, the last will and testament of the deceased.

In conformity with the provisions of section 19 of the act of 1898, the circuit court returned to the orphans court the proceedings before it, with the verdict of the jury and the testimony taken and a copy of the charge to the jury. Thereupon the orphans court passed a decree refusing probate of the will, in accordance with the finding of the issue, as it was required to do by the provisions of the section last cited.

The effect to be given to a verdict certified into the orphans court and a decree made thereon, on an appeal to this court under the provisions of the act of 1874, was well settled. The court of errors declared that upon such an appeal there was open for consideration in this court not merely the propriety of the decree, but the right to probate of the will, and upon such an appeal this court might decide the question on the evidence which was before the jury, if sent here, together with additional proofs taken in this court, if any were ordered, or if the evidence is not sent here, then upon original proof taken under the practice of this court. *Rusling* v. *Rusling, 9 Stew. Eq. 603; Smith* v. *Smith, 3 Dick. Ch. Rep. 566.* The similar provisions of the act of 1898 must receive the same construction.

The evidence taken in the circuit court has been duly sent to this court. No application for taking further proofs has been made. Whether, therefore, the will should be admitted to probate is to be determined by me upon the evidence which was before the jury. Their verdict thereon should induce careful scrutiny of the evidence before a result not in accord therewith should be reached, but the verdict can have no other effect.

The evidence establishes the fact that the paper-writing in dispute was executed by George Schuchhardt with all the formalities required by law to make a good testamentary disposition of his property, and that at the time of its execution he was possessed of testamentary capacity. In these respects the conclusions of the jury are in accord with the conclusions of this court. This result will require the admission of the paper to probate, unless the proofs establish the contention that it was

the product of undue influence and not the act of testator's own will.

The burden of proof of undue influence is upon those who assert it. *Dumont* v. *Dumont, 1 Dick. Ch. Rep. 223; Earle* v. *Norfolk and New Brunswick Hosiery Co., 9 Stew. Eq. 188; affirmed, 10 Stew. Eq. 315; Turnure* v. *Turnure, 8 Stew. Eq. 437.* When the testamentary capacity is undoubted, this burden will not be supported by mere evidence that some person had an opportunity to exert or was possessed of influence over the testator. It must be made to appear, either expressly or by justifiable and fair inference from circumstances proved, that such influence was, in fact, exerted, and that it was so exerted as to dominate and control the will of testator and coerce him to make a testamentary disposition of his property which he would not otherwise have made.

In support of the decree, the contention is that the proofs conclusively show that, some ten or twelve years before the execution of the will, the testator, although a married man with a family of children, had illicit intercourse with one M. L., by whom he had a child called Georgianna, whom he recognized as his; that they justify the inference that the meretricious intercourse between testator and M. L. continued at the time the will was executed; that M. L. asserted and threatened to use influence on testator to prevent respondents from receiving any of testator's property, and that the contents of testator's will indicate that she had succeeded in thus influencing him.

The illicit intercourse which resulted in the birth of the child, Georgianna, is clearly established. Testator made no concealment of his paternity. On the contrary, he made a regular allowance to the mother in aid of the child's support; he paid for music lessons for her; he took her with him to places of amusement, and even to his own house when his family were living with him; he exhibited great affection for her and declared to several of his friends that he intended to make provision for her out of his property.

Proof that testator maintained illicit relations with M. L. at the time of the execution of the will is by no means convincing. His conduct, from which that inference is sought to be drawn, is

not inconsistent with such honest intercourse between them as would naturally result from the fact that their child, whom he was fond of, lived with her. There is some proof that might justify the suspicion that after the execution of the will, although she was then married to one Sawyer, their relation was meretricious. But the inference in either case encounters the positive denial of the only survivor.

Proof that M. L. threatened to exert influence to prevent respondents from obtaining any share of the property comes alone from the respondent Charles. It is positively contradicted by her. The other respondent, who was present at part of the interview when, according to Charles' testimony, the threat was made, and a disinterested witness, also present, did not hear it.

But if the evidence would justify the belief that improper relations between testator and M. L. were maintained up to the time the will was made and that she had threatened to exert influence upon the testator in respect to his property, it remains to inquire whether her influence is shown to have been, in fact, exerted and to have coerced him into doing what he would not otherwise have done.

The influence of an immoral relation maintained by a testator with his mistress will not raise a presumption against a will which leaves to her all the property he may dispose of by will, though it will call for close scrutiny of the circumstances. *Arnault* v. *Arnault, 7 Dick. Ch. Rep. 801.*

The argument, however, is that it appears that by reason of their illicit relation M. L. had opportunity to exercise influence upon testator; that she had threatened that respondents should get none of testator's property, and that the will practically excludes respondents from all benefit thereunder, the inference that she exercised her influence and induced testator to exclude respondents from his bounty must be drawn.

It is first observable that the inference thus sought to be drawn encounters not only the denial by M. L. of having uttered any such threats, but her equally positive denial that she exerted or attempted to exert any influence upon testator in respect to his testamentary disposition of his property. Such a denial from the lips of a mistress to whom her paramour had left, by will,

Schuchhardt *v.* Schuchhardt.

the whole or a large part of his estate to the exclusion of lawful objects of his bounty, would be looked at with suspicion and might not be accorded much credit. But the will before me makes no provision whatever for the woman with whom testator is presumed to have lived and under whose influence he is claimed. to have acted.

It is, however, insisted that the will makes provision for testator's child by M. L. and that such provision is probably larger than it would otherwise have been, because of the exclusion of respondents from testator's bounty. It is argued that the mother must have desired that the child should benefit by her father's will, and that she may be presumed to have exerted influence in favor of the child notwithstanding her denial.

If testator voluntarily told M. L., as he did others, that he intended to make provision for their child by his will, I see no reason to discredit her denial of any attempt to influence him to do so.

If I discredit her denial, what influence should I infer she exerted upon testator in respect to their child? If testator made no provision for the child she would have been dependent upon her mother alone. M. L. might well represent to testator that fact, and even urge and persuade him to make provision for the child, although the bounty for testator's family was thereby diminished. Testator owed a moral duty at least to make such provision, and arguments and even persuasions to do that duty would not be undue, unless they appear to have produced a disposition of his property which he would not otherwise have made. *Hughes* v. *Murtha, 5 Stew. Eq. 288.*

It is not sufficient to present facts from which the exertion of undue influence may possibly be inferred. The existence of interest and the fact of opportunity to exert it will not suffice to establish undue influence. *Turnure* v. *Turnure, 8 Stew. Eq. 437; affirmed, 10 Stew. Eq. 629.* If from all the facts and circumstances existing when the will was made an inference can be drawn that its provisions are such as he intended them to be, and such as he would have made if no influence had been exerted upon him, the latter inference is at least as probable as-

the former, and the burden of proof in the attack upon the will is not sustained.

The inference that undue influence prevailed over testator's intent and induced him to do what he would not otherwise have done, must stand upon preponderating proof, excluding other reasonable inference.

If the character of testator and the circumstances existing at the execution of the will naturally and reasonably explain its provisions so that it may be fairly inferred that it was such a will as he would have made, the inference that it was the product of influence will not be justified.

The proof shows that testator was a man of determined character and resolution.

At the execution of his will testator's family consisted of his wife, his sons George, William and Charles, and his daughter. Lillie. Some time before testator had discovered that his wife had encouraged his daughter to receive the addresses of a man named John Cutter, whom he distrusted and whom he had forbidden his daughter to associate with. A violent altercation ensued and the wife left the house taking with her the daughter, and neither ever returned to testator. The daughter married the man in question, and within two months thereafter was delivered of a child by him.

With the son George testator was intimate and affectionate.

The son William had taken to evil courses and is said to have served a term in state prison.

The son Charles had engaged in a quarrel with the father and procured his father's arrest, which it is proved much incensed testator.

It is not necessary to determine whether testator's indignation at the conduct of his wife and children was justified, or whether he ought not to have overlooked it and forgiven them. If the proofs show that the indignation existed and for a cause that might occasion it, and the disposition made by the will would be the natural result thereof, the attribution of such disposition to undue influence cannot be supported.

Most of testator's property was real estate. Some of it stood in the joint name of his wife and himself, and upon his death

she has apparently become the owner. In the rest of the real estate she has her dower. Moved by her desertion of him and her encouragement of his daughter to disobey him, the failure of testator to make any provision for her was a natural result of his resentment.

To William the will bequeaths $25 and to Charles $5. These small legacies may well be attributed to testator's disapproval of their conduct.

After the small bequests above stated the testator bequeathed and devised all his estate to the executors and the survivor of them in trust. It is unnecessary to state the details of the trust. It is sufficient to say that one-third of the estate affected thereby goes to George, testator's son, one-third to Georgianna, testator's illegitimate daughter, whom he calls, in the will, Georgianna Schuchhardt, and the other one-third goes to testator's daughter, Lillie, provided she is not married to John Cutter. In case of such marriage, the share otherwise provided for her goes to George and Georgianna. The conditional gift to his daughter, Lillie, is a natural result of his feeling in respect to her disobedience and desertion of him.

Taking into consideration the situation of the family, the circumstances of testator, the resentment he had against some of them, the good will he had toward the remaining son, the evident affection he had for his illegitimate child and his purpose to provide for her, the will may be inferred to have been the product of his own will and not to have been procured by undue influence.

There is nothing to justify the verdict which finds that the will of testator was dominated by the mistress or any other person. I am able to find no ground upon which I can pronounce this will invalid.

The decree must be reversed and a decree admitting the will to probate must be entered.