## ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of NETTIE B. CROTTY, deceased.

[Decided August 20th, 1926.]

**Wills — Probate — Undue Influence — Testator Discriminated Against Children Who Had or Who Shall Marry Persons of the Roman Catholic Faith—Undue Influence is That Which Dominates the Will of the Testator and Produces a Testamentary Disposition Which Would Not Have Been Made Had it Not Been for the Coercive Effect of Such Influence— Testimony Showed That No Such Coercion was Exercised— Wills Will Not be Set Aside on Account of Strong, Violent and Unjust Prejudice When Such Prejudice is Not the Result of Delusions or of Mental Incapacity.**

*Messrs. Hobart & Minard* (by *Duane E. Minard*), for the proponent.

*Messrs. Howe & Davis* (by *Richard J. Fitz Maurice*), for the caveator.

KOCHER, ADVISORY MASTER.

Nettie B. Crotty, late of West Orange, New Jersey, died on November 7th, 1925, leaving a certain paper-writing purporting to be her last will and testament, wherein and whereby she divided her property equally among her children, Florence, Robert and James. She further provided that if either of her sons should thereafter marry girls of the Roman Catholic faith, in that event they should receive nothing from her estate. She also left an undivided fourth part of her estate to James L. Crotty, the executor named in said will, in trust for her son Harry I. Crotty, and provided that if, at the expiration of three years from her death, her said executor was satisfied that her said son Harry I. Crotty, was no longer addicted to the use of intoxicating liquor, then, and in that event, she directed him to pay the principal of said trust fund to the said Harry I. Crotty.

The third paragraph of testatrix's will reads as follows:

"Third. I am not making any provision in this will for my son Albert A. Crotty, because he has, against my expressed wishes, married a girl of the Roman Catholic faith."

A caveat against the probate of said will was filed by the said Albert A. Crotty.

It appears from the testimony that John E. Selser, a member of the bar of this state of unquestioned integrity, was communicated with about the middle of September, 1925, by one Mrs. Piggins, a mutual friend of both Selser and the testatrix, who advised him that Mrs. Crotty desired to make her will; that he called at the home of Mrs. Crotty and found her in bed, but with her mental faculties unimpaired, and that after a lengthy discussion with him as to the disposition which she desired to make of her estate she gave him instructions in regard to the preparation of the will as above outlined.

Later on, Mrs. Crotty went to the hospital and Mrs. Florence Ditzel, one of the testatrix's daughters, communicated with Mr. Selser that Mrs. Crotty was anxious to execute the will, and on October 15th, 1925, Selser, who in the meantime had prepared the will in accordance with Mrs. Crotty's instructions, went to the hospital and superintended its execution, the witnesses being himself and Mrs. Piggins.

It is admitted that the paper-writing in question was executed in manner and form prescribed by law, but it is vigorously contended on the part of the caveator that the will is the product of undue influence.

Undue influence has been defined to be such influence as dominates the will of the testator and produces a testamentary disposition which she would not have made if not coerced by such influence. *Byrnes* v. *Gibson, 68 Atl. Rep. 756.* It must be such as to destroy the free agency of the testator and amount to moral or physical coercion. It must be proved, moreover, that the act done was the result of coercion. There must be a control exercised over the mind of the testator or an importunity practiced which he could not resist or to which he yielded for the sake of peace. *Lover-*

*idge* v. *Brown, 3 N. J. Adv. R. 1050; In re Tunison's Will, 83 N. J. Eq. 277; affirmed, 93 Atl. Rep. 1087.*

The testimony in this case will be searched in vain for any indication of the exercise of any influence as above defined by any person or group of persons. It is true that the question whether a testamentary disposition is the product of undue influence or not must always be largely controlled by the condition of mind and state of health of the person alleged to have been unduly influenced. *Haydock* v. *Haydock, 33 N. J. Eq. 494; affirmed, 34 N. J. Eq. 570.* In the case under consideration, however, there is nothing to indicate that the testatrix's mind was in anywise affected by her illness. On the contrary, the very terms of the will, and its provisions creating a trust of Harry Crotty's share, until her executor shall feel satisfied that he had overcome his habits of drunkenness, of itself is indicative of the existence of a robust intelligence. The most that can be said is that the will shows upon its face that testatrix entertained a violent prejudice against her children or sons marrying girls of the Roman Catholic faith.

The testimony upon this subject is that while testatrix was not intolerant toward persons confessing the Roman Catholic religion, but that, on the contrary, she had many friends who professed that faith, still she was unutterably opposed to what she called mixed marriages—that is to say, marriages between Roman Catholics and Protestants, and that she entertained a firm belief that such marriages were not successful. Perhaps she was influenced in this opinion by the experience of her daughter Florence, who had married a man who was said to be a Roman Catholic, and who had separated from him, although Florence insisted that religion was not the cause of the separation. However that may be, it is settled that a will cannot be set aside on account of strong, violent and unjust prejudice of the testator exhibited in the disposition of his property made by his will, if such prejudice be not founded on delusions and does not show mental incapacity. *Trumbell* v. *Gibbons, 22 N. J. Law 117; In re John Gleespin, 26 N. J. Eq. 523; Lewis' Case, 33 N. J. Eq. 219,* and it is also settled that the unreason-

ableness of testator's prejudice and unfairness in the disposition of his property will not alone avail the court to repudiate the will. *In re John Glesspin, supra.*

The case under consideration is barren of any indication that the prejudice of the testatrix was founded upon delusions of any character, but that, on the contrary, they were the result of hereditary environment, and, to some extent, at least, of personal experience.

While the will upon its face states that the reason for not making any provision for her son Albert was because of his marrying a girl of the Roman Catholic faith, Mr. Selser, the draftsman of the will, testified that in considering the disposition of her property by testatrix this was only one of the elements which entered into her mind and determined her to exclude Albert from participation in her estate. She told Mr. Selser that Albert had been a constant care to her and that his conduct caused her constant anxiety; that he had been arrested upon several occasions for various causes, and upon cross-examination Albert, himself, admited that he had been convicted of various crimes, ranging from assault and battery to stealing automobiles. That this testimony was competent upon cross-examination. See *State* v. *Petrucelli, 98 N. J. Law 903; State* v. *Mount, 73 N. J. Law 582.*

Mr. Selser further testified that the wayward conduct of Albert was the moving cause of his being deprived of participation in his mother's estate, and that in discussing with testatrix the terms of her will she felt that she should give some reason why Albert was excluded therefrom, and not desiring to openly attack his character in her will, she suggested that the reason which was alleged as that for his exclusion be expressed, which was, as a matter of fact, only one of many other reasons.

The caveator, in support of his contention that the will in question was the product of undue influence, relies upon a number of slight or suspicious circumstances spoken of in *Spark's Case, 63 N. J. Eq. 242,* the leading case on this subject and those following it, overlooking, however, the fact that all of these cases have their foundation in the ex-

istence of confidential relations, which must be established before the so-called "slight circumstances" can become of any probative value. In this case there is, however, not the slightest evidence of the existence of confidential relations between any of the beneficiaries under the will and the testatrix. This being true, the so-called "slight circumstances" became valueless.

The will in question was unquestionably executed as required by the statute; was executed by a person of competent mental capacity, and is not the product of undue influence and should be admitted to probate.

It is contended by proponent that the costs of this contest should be charged against the caveator for the reason that there was no reasonable cause for contesting the validity of the will, and that under section 197 of the Orphans Court act the court may determine who shall bear the cost of the controversy, and if there be no reasonable cause for contesting the validity of the will found, that the entire costs may be charged against the caveator.

In the case under consideration, while the testatrix was physically ill, her mind was, unquestionably, vigorous. She knew the claims of the various persons upon her bounty and carefully distinguished between them; she deprived Harry from presently participating in her estate until he had overcome the habit of indulging in intoxicating liquor; she discriminated against the caveator because of his long years of misconduct, which culminated by his marrying against her wishes, and she laid down the same rule of thumb in regard to her other sons, as she laid down in Harry's case—that is to say, that they should not marry a girl of the Roman Catholic faith.

While there can be no question that a large amount of testimony was taken on the part of the caveator, which is of no value whatever in determining this controversy, still, under all of the facts of the case, I am constrained to deny the application of the proponent to charge the caveator personally with the costs of this proceeding.

All of which is respectfully advised.