260 N.J. Super. 519 (1992)
617 A.2d 266
IN THE MATTER OF THE PROBATE OF THE ALLEGED LAST WILL AND TESTAMENT OF SIDNEY LIEBL, SR., DECEASED.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1992.
Decided November 13, 1992.
*522 Before Judges MICHELS and BILDER.
Catherine M. Langlois, attorney for appellant Sidney Liebl, Jr.
Breitenstein & Browne, attorney for respondent Arleen Backer (Allan P. Browne, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Sidney Liebl, Jr. appeals from (1) a judgment of the Chancery Division, Probate Part, that dismissed his complaint seeking to set aside the judgment of the Bergen County Surrogate admitting to probate the Last Will and Testament of his father Sidney Liebl, Sr., deceased, and awarded defendant Arleen Backer costs against him, and (2) a post-judgment order denying his motion for rehearing or reconsideration.
On June 5, 1990, Sidney Liebl, Sr. died at age 82. Decedent was survived by his son, plaintiff; his granddaughter, defendant; and two great-grandchildren, Bryan and Brett Backer. On June 21, 1990, the Last Will and Testament of decedent, dated July 21, 1989, was admitted to probate by judgment of the Surrogate of Bergen County. The will named defendant as the primary beneficiary. Thereafter, plaintiff instituted this action in the Chancery Division, Probate Part, seeking to set aside the judgment of probate and to have a substitute administrator pendente lite appointed. Plaintiff claimed that decedent "was incompetent and could not have known the nature of his acts and was, therefore, incapable of making a Last Will and *523 Testament." The trial court held that decedent's July 21, 1989 will was properly admitted to probate and that "the proofs establish that there is no basis for a challenge to the admission of the Will to probate based upon lack of testamentary capacity, undue influence, or suspicious circumstance." This appeal followed.
Plaintiff seeks a reversal of the judgment, contending that (1) decedent did not comprehend the nature of his assets and, therefore, the distribution under his will was invalid; (2) the facts established that there was undue influence by defendant upon decedent so as to invalidate the July 21, 1989 will; (3) the trial court should not have enforced the provisions of the will since the result is contrary to public policy, and (4) since the will of July 21, 1989 should not be probated, decedent's will of August 5, 1982 should be deemed uncancelled and unrevoked or, alternatively, the intestacy statute should apply. We disagree and affirm.
We are satisfied from our study of the record and the arguments presented that there is sufficient credible evidence in the record as a whole to support the findings and conclusions of the trial court and we discern no good reason or justification for disturbing them. See Leimgruber v. Claridge Assocs. Ltd., 73 N.J. 450, 455-56, 375 A.2d 652 (1977); Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974); State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). See also R. 2:11-3(e)(1)(A). Moreover, all of the issues of law raised are clearly without merit. R. 2:11-3(e)(1)(E).
Additionally, we point out that "[t]he findings of the trial court on the issues of testamentary capacity and undue influence, though not controlling, are entitled to great weight since the trial court had the opportunity of seeing and hearing the witnesses and forming an opinion as to the credibility of their testimony." Gellert v. Livingston, 5 N.J. 65, 78, 73 A.2d 916 (1950); In re Hoover, 21 N.J. Super. 323, 328, 91 A.2d 155 (App.Div. 1952), certif. denied, 11 N.J. 211, 93 A.2d 819 (1953). *524 Cf. Dolson v. Anastasia, 55 N.J. 2, 6-7, 258 A.2d 706 (1969). Such factual findings should not be disturbed unless they are so manifestly unsupported or inconsistent with the competent, reasonably credible evidence so as to offend the interests of justice. Leimgruber v. Claridge Assocs., Ltd., supra, 73 N.J. at 456, 375 A.2d 652; Rova Farms Resort v. Investors Ins. Co., supra, 65 N.J. at 484, 323 A.2d 495; State v. Johnson, supra, 42 N.J. at 162, 199 A.2d 809.
Furthermore, there is a legal presumption that "the testator was of sound mind and competent when he executed the will." Haynes v. First Nat'l State Bank of N.J., 87 N.J. 163, 175-76, 432 A.2d 890 (1981) (quoting Gellert v. Livingston, supra, 5 N.J. at 71, 73 A.2d 916); In re Hoover, supra, 21 N.J. Super. at 325, 91 A.2d 155. The gauge of testamentary capacity is "whether the testator can comprehend the property he is about to dispose of; the natural objects of his bounty; the meaning of the business in which he is engaged; the relation of each of the factors to the others, and the distribution that is made by the will." Gellert v. Livingston, supra, 5 N.J. at 73, 73 A.2d 916; see 5 Alfred C. Clapp, New Jersey Practice  Wills and Administration § 36 at 150-56 (1982). Testamentary capacity is to be tested at the date of the execution of the will. Gellert v. Livingston, supra, 5 N.J. at 76, 73 A.2d 916. Furthermore, "[a]s a general principle, the law requires only a very low degree of mental capacity for one executing a will." In re Rasnick, 77 N.J. Super. 380, 394, 186 A.2d 527 (Cty.Ct. 1962); see Loveridge v. Brown, 98 N.J. Eq. 381, 387, 129 A. 131 (E. & A. 1925); 5 Clapp, supra, § 36 at 153. "[T]he burden of establishing a lack of testamentary capacity is upon the one who challenges its existence [and] [t]hat burden must be sustained by clear and convincing evidence." In re Hoover, supra, 21 N.J. Super. at 325, 91 A.2d 155; accord In re Rasnick, supra, 77 N.J. Super. at 395, 186 A.2d 527. A testator's misconception of the exact nature or value of his assets will not invalidate a will where there is no evidence of incapacity. See In re Livingston's Will, 37 A. 770, 772 (Prerog. 1897); McCoon *525 v. Allen, 45 N.J. Eq. 708, 719, 17 A. 820 (Prerog.Ct. 1889); Collins v. Osborn, 34 N.J. Eq. 511, 520 (Prerog.Ct. 1881); 5 Clapp, supra, § 36 at 151 n. 8. "Even an actual mistake by a testator as to the extent of his property does not show as a matter of law that he was wanting in testamentary capacity." 79 Am.Jur.2d Wills § 72 at 331 (1975). Rather, a testator need only know that his property is worth some value and have a general estimate as to the nature of his estate. Ibid. "[I]t is not ignorance of the kind or amount of property owned by the testatrix which invalidates [a] will, but ignorance resulting from a mental incapacity to comprehend the kind and amount of such property." In re Livingston's Will, supra, 37 A. at 772.
"Testamentary dispositions are required to be enforced unless contrary to public policy or a rule of positive law." Alper v. Alper, 2 N.J. 105, 114-15, 65 A.2d 737 (1949); Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444, 453, 20 A.2d 21 (Ch. 1941). "It is well settled in this State that every citizen of full age and sound mind has the right to make such disposition of property by will or deed as he or she in the exercise of individual judgment may deem fit." Casternovia v. Casternovia, 82 N.J. Super. 251, 257, 197 A.2d 406 (App.Div. 1964); Benedict v. New York Trust Co., 48 N.J. Super. 286, 289, 137 A.2d 446 (Ch.Div.), aff'd o.b., 50 N.J.Super, 177, 141 A.2d 340 (App.Div. 1958); see In re Estate of Campbell, 71 N.J. Super. 307, 310, 176 A.2d 840 (Cty.Ct. 1961). Further, a testator is not required to divide his or her estate equally among his or her children. See Casternovia v. Casternovia, supra, 82 N.J. Super. at 257, 197 A.2d 406; 5 Clapp, supra, § 61 at 217 n. 31; 79 Am.Jur.2d Wills §§ 66, 67 at 324-26. Indeed, a testator "may even exclude one or more or all of the members of his own family." Benedict v. New York Trust Co., supra, 48 N.J. Super. at 289, 137 A.2d 446. "Our statute permits intentional disinheritance." In re Estate of Campbell, supra, 71 N.J. Super. at 310, 176 A.2d 840; see Stevens v. Shippen, 28 N.J. Eq. 487, 536 (Ch. 1877), aff'd, 29 N.J. Eq. 602 (E. & A. 1878), aff'd sub nom., Clarkson v. Stevens, 106 U.S. 505, 1 S.Ct. 200, 27 L.Ed. 139 *526 (1882); N.J.S.A. 3B:5-16. "A will cannot be set aside merely because it is `unequal or unjust.' `If capacity, formal execution, and volition appear, the will of the most impious man must stand, unless there is something, not in the motives which led to the disposition, but in the actual disposition, against good morals or against public policy.'" In re Blake's Will, 21 N.J. 50, 57, 120 A.2d 745 (1956) (quoting Den D. Trumbull v. Gibbons, 22 N.J.L. 117, 153 (Sup.Ct. 1849)); see 79 Am.Jur.2d Wills § 65 at 324.
An unnatural will, that is, one which fails to provide for the natural objects of the testator's bounty, is sometimes characterized as a strong or formidable circumstance or as raising a suspicion of undue influence. However, mere inequality of benefit among those of equal degree of consanguinity will not of itself justify an inference of undue influence. It must be borne in mind that it is clearly lawful for a testator to make an unjust will; and that it is lawful, too, for a testator to entertain a prejudice or a partiality. [5 Clapp, supra, § 61 at 216-17 (footnotes omitted)].
"Any repugnance the court may feel at the unnaturalness of the testament cannot be permitted to influence it to frustrate the testator's legal right to dispose of his property as he willed." In re Petkos, 54 N.J. Super. 118, 128, 148 A.2d 320 (App.Div.), certif. denied, 30 N.J. 150, 152 A.2d 170 (1959). "[T]here is no judicial superintendence of the reason and wisdom of the testamentary act, save as it offends against positive law or imperative public policy." In re Blake's Will, supra, 21 N.J. at 57, 120 A.2d 745.
Applying these settled principles here, it is perfectly clear that decedent's will, dated July 21, 1989, was properly admitted to probate. The proofs show that decedent had sufficient mental capacity to draft his will. Indeed, both parties agree that "there was no question as to his capacity ..." Rather, relying on the testimony of an insurance agent, plaintiff challenged decedent's knowledge of the value of his business to invalidate the will. As appropriately noted by the trial court, the court is not presented with the situation where a business, which was once worth a substantial amount, suddenly decreased in value unbeknownst to the decedent. Rather, the trial court concluded that the business "never had a great deal *527 of value." Furthermore, the trial court found the testimony of the insurance agent "a very thin lead" which "doesn't come close to demonstrating the kind of mistake and misapprehension and kind of awareness argued by plaintiff."
Further, decedent's estimate of his net worth was only an approximation and not very reliable given the purpose of the estimate coupled with the insurance agent's later statement to decedent that the estimate did not affect the annuity contract. Even if the business had suddenly declined, decedent's lack of knowledge was immaterial as there is no indication that decedent intended to distribute his estate evenly. The trial court, therefore, properly concluded that decedent had the requisite testamentary capacity in dismissing plaintiff's argument that decedent had misapprehended the value of the business.
Even assuming that decedent may have misapprehended the value of the business, decedent's will evidences an intent not to distribute his estate evenly. Decedent's prior will had divided the estate evenly between his two children. Upon the death of defendant's mother, decedent modified his will to divide the estate evenly between plaintiff and defendant. After a year of consideration, however, decedent returned to his attorney and requested that plaintiff receive only the business and defendant receive the residual estate. Paragraph Four of the will specifically provided for "no further provision for [decedent's] son Sidney Liebl, Jr. for reasons best known to him." Furthermore, there was testimony which indicated that decedent and plaintiff may not have been getting along with each other. Indeed, even plaintiff stated that he no longer spent holidays with his father and that they did not exchange gifts or cards.
We are also satisfied that the trial court properly found that plaintiff failed to establish undue influence. "The burden of proving undue influence is upon the person asserting it and it must be clearly established." Gellert v. Livingston, supra, 5 N.J. at 71, 73 A.2d 916. "`Undue influence' has been defined as `mental, moral or physical' exertion which has destroyed the *528 `free agency of a testator' by preventing the testator `from following the dictates of his own mind and will and accepting instead the domination and influence of another.'" Haynes v. First Nat'l State Bank of N.J., supra, 87 N.J. at 176, 432 A.2d 890 (quoting In re Neuman, 133 N.J. Eq. 532, 534, 32 A.2d 826 (E. & A. 1943)). There are two elements necessary to give rise to a presumption of undue influence. First, there must be a "confidential relationship" between the testator and a beneficiary "where trust is reposed by reason of the testator's weakness or dependence or where the parties occupied relations in which reliance is naturally inspired or in fact exists...." In re Hopper, 9 N.J. 280, 282, 88 A.2d 193 (1952); accord Haynes v. First Nat'l State Bank of N.J., supra, 87 N.J. at 176, 432 A.2d 890. Second, there must be "the presence of suspicious circumstances which, in combination with such a confidential relationship, will shift the burden of proof to the proponent." Haynes v. First Nat'l State Bank of N.J., supra, 87 N.J. at 176, 432 A.2d 890. "Such circumstances need be no more than `slight.'" Ibid.; In re Blake's Will, supra, 21 N.J. at 55-56, 120 A.2d 745.
However,
Not all influence is "undue" influence. Persuasion or suggestions or the possession of influence and the opportunity to exert it, will not suffice. It must be such as to destroy the testator's free agency and to constrain him to what he would not otherwise have done in the disposition of his wordly assets. The coercion or domination exercised to influence the testator may be moral, physical, or mental, or all three, but the coercion exerted upon the testator's mind must be of a degree sufficient to turn the testator from disposing of his property according to his own desires by the substitution of the will of another which he is unable to resist or overcome. In re Brengel's Will, 85 N.J. Eq. 487 [95 A. 750] (Prerog. 1915); In re Neuman, supra [133 N.J. Eq.] p. 534 [32 A.2d 826]; Schuchhardt v. Schuchhardt, 62 Id. [N.J. Eq.] 710 [49 A. 485] (Prerog. 1901). Each case of this nature must be governed by the particular facts and circumstances attending the execution of the will and the conduct of the parties who participated in order to determine if the coercion exerted was "undue." In re Raynolds [Estate] supra, [132 N.J. Eq. 141] p. 152 [27 A.2d 226]; In re Nixon, supra [136 N.J. Eq. 242] p. 245 [41 A.2d 119]. [Gellert v. Livingston, supra, 5 N.J. at 73, 73 A.2d 916].
While the proofs show that defendant had a close relationship with her grandfather, she did not exert undue influence upon *529 him. Clearly, her numerous visits and calls and even her discussions regarding her housing problems did not "destroy the testator's free agency." Furthermore, a presumption of undue influence is unwarranted as neither a sufficient "confidential relationship" nor "suspicious circumstances" are evidenced from the record.
Additionally, the proofs indicate that decedent handled his own financial matters and prepared his estate without the presence of any undue influence. Decedent's attorney testified that he "did not see or hear anything from [decedent] to suggest ... any [undue] influence." Rather, counsel always met with decedent alone, and had never spoken to plaintiff or defendant prior to decedent's death. Similarly, the insurance agent communicated only with decedent. Furthermore, neither plaintiff nor defendant knew about decedent's personal financial matters. In sum, the proofs established that decedent was, until his death, a very active and self-reliant individual.
Finally, we are satisfied that decedent's will does not violate any public policy of this state. First, this is not a case in which the testator placed restrictions or conditions upon the legacy that are contrary to public policy and thus invalid. See e.g., Girard Trust Co. v. Schmitz, supra, 129 N.J. Eq. at 451, 20 A.2d 21; see also David v. Vesta Co., 45 N.J. 301, 311-12, 212 A.2d 345 (1965); 6 Alfred C. Clapp & Dorothy G. Black, New Jersey Practice  Wills and Administration, § 666 at 258 (1984). Rather, decedent merely limited the extent of his estate he gave to his son. As noted previously, a testator is not required to divide his or her estate evenly among his or her children and may even exclude a child or family member completely. See Casternovia v. Casternovia, supra, 82 N.J. Super. at 257, 197 A.2d 406; Benedict v. New York Trust Co., supra, 48 N.J. Super. at 289, 137 A.2d 446; 5 Clapp, supra, § 61; 79 Am.Jur.2d Wills §§ 66, 67.
"A will cannot be set aside merely because it is `unequal or unjust.' `If capacity, formal execution, and volition appear, *530 the will of the most impious man must stand, unless there is something, not in the motives which led to the disposition, but in the actual disposition, against good morals or against public policy.'" In re Blake's Will, supra, 21 N.J. at 57, 120 A.2d 745 (quoting Den D. Trumbull v. Gibbons, 22 N.J.L. 117, 153 (Sup.Ct. 1849)); see 79 Am.Jur.2d Wills § 65 at 324. "Any repugnance the court may feel at the unnaturalness of the testament cannot be permitted to influence it to frustrate the testator's legal right to dispose of his property as he willed." In re Petkos, supra, 54 N.J. Super. at 128, 148 A.2d 320. "[T]here is no judicial superintendence of the reason and wisdom of the testamentary act, save as it offends against positive law or imperative public policy." In re Blake's Will, supra, 21 N.J. at 57, 120 A.2d 745. "A will may be contrary to the principles of justice and humanity; its provisions may be shockingly unnatural and extremely unfair," however, courts are bound to uphold the validity of a will if made by a person of sufficient age to be competent and if made while of sound and unconstrained mind. In re Hoover, supra, 21 N.J. Super. at 325-26, 91 A.2d 155. "[A] will cannot be set aside on account of strong, violent and unjust prejudice of the testator ... if such prejudice be not founded on delusions and does not show mental incapacity ... [and] that the unreasonableness of testator's prejudice and unfairness in the disposition of his property will not alone avail the court to repudiate the will." In re Crotty, 4 N.J. Misc. 745, 747-48, 134 A. 622 (Orphans Ct. 1926) (citations omitted).
§ 82. Passions and prejudices; excitement.
The existence of strong passions and prejudices on the part of a testator is not inconsistent with his possessing testamentary capacity. The testator's prejudice against a child or other near relative is not in itself a ground for invalidating his will, notwithstanding that it is wholly unreasonable and ill-founded. People may hate their relatives for bad reasons and yet not be deprived of testamentary power.
It is only where a prejudice borders upon a delusion by which the testator is rendered devoid of the power to realize the extent of his property, the natural objects of his bounty, and the business at hand, when he executes the will, that it incapacitates him to make a will. [79 Am.Jur.2d Wills § 82 at 336-37].
*531 There is no claim here that decedent was under any insane delusions. Similarly, there are no conditions imposed by the will which violate public policy. Consequently, the trial court properly addressed the issue solely in terms of testamentary capacity. Even if decedent had totally disinherited his son due to an unreasonable discriminatory prejudice, this cannot be a ground to set aside the will.
Accordingly, the judgment and order under review are affirmed substantially for the reasons expressed by Judge Lesemann in his oral opinion of July 23, 1991.