**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5407-18

IN THE MATTER OF THE
ESTATE OF PETER J.
PISZCZATOSKI, deceased.

_____

Argued June 8, 2021 – Decided July 1, 2021

Before Judges Fisher, Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000071-18.

Debra Nitto and Daniel J. Piszczatoski, appellants, argued the cause pro se (Peter S. Piszczatoski, Daniel J. Piszczatoski, and Debra Nitto appellants pro se, on the briefs).

David M. Repetto argued the cause for respondent Maureen Lyon (Harwood Lloyd, LLC, attorneys; David M. Repetto, of counsel and on the brief).

PER CURIAM

Peter J. Piszczatoski died on January 30, 2018, at the age of ninety-two. He and his wife Anne, who died in 1985, had five children. Four of the five – Daniel Piszczatoski, Debra Nitto, Peter S. Pisczatoski, and Thomas

Piszczatoski[1] (plaintiffs) – commenced this action against the fifth, Maureen Lyon (defendant). Plaintiffs' complaint sought to invalidate a deed transferring decedent's Lyndhurst home to defendant and to compel her submission of decedent's 1968 Last Will and Testament for admission for probate. In response, defendant provided copies of Wills executed by decedent in 2002 and 2007, both of which expressed his desire to disinherit plaintiffs.[2] On the return date of an order to show cause, the judge denied plaintiffs' requests for relief, dismissed all caveats, and admitted the 2007 Last Will and Testament to probate.

During a five-day bench trial focused on plaintiffs' claim that defendant unduly influenced their father in his execution of the 2007 Will, the judge heard testimony from all five siblings, a physician, two attorneys, and Lyndhurst's former chief of police. The trial judge expressed his findings of fact and conclusions of law in an oral decision rendered on May 30, 2019, and that same day, entered a final judgment rejecting plaintiffs' claims.

Plaintiffs[3] appeal, arguing:

---

[1] Thomas Piszczatoski was not an original plaintiff but later joined when an amended complaint was filed.

[2] The 2002 Will did not disinherit Thomas Pisczatoski but the 2007 Will did.

[3] All plaintiffs were represented by counsel throughout the trial court proceedings.

A-5407-18

I. [THE TRIAL JUDGE'S] CONDUCT TOWARDS PLAINTIFFS WAS IN CONTRAST TO HIS CONDUCT TOWARDS DEFENDANT.

II. KEY TESTIMONY WAS NOT CONSIDERED BY [THE TRIAL JUDGE] WHICH OMISSIONS SKEWED THE COURSE OF THE PROCEEDINGS.

III. [THE TRIAL JUDGE] MISQUOTED AND CONFLATED KEY TESTIMONY AND WAS INATTENTIVE TO THE EVIDENCE BROUGHT BEFORE HIM WHICH LED TO AN UNJUST DECISION DENYING PLAINTIFFS THEIR DUE PROCESS OF LAW.

We find insufficient merit in these arguments to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

We start by referring to the standard that limits the scope of appellate review. Findings rendered by a judge at the conclusion of a bench trial "are considered binding on appeal when supported by adequate, substantial, and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974); see also Allstate Ins. Co. v. Northfield Med. Ctr., PC, 228 N.J. 596, 619 (2017). This is, as the Supreme Court has repeatedly said, "especially" true "when those findings 'are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Zaman v. Felton, 219 N.J. 199, 216

(2014) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)); see also Gellert v. Livingston, 5 N.J. 65, 78 (1950) (applying same standard in a case alleging testamentary incapacity and undue influence).

Plaintiffs' arguments on appeal are essentially a multi-faceted diatribe against defendant, her attorney, and the trial judge. Setting aside these unhelpful and unsupported ad hominem attacks, plaintiffs express only their disagreement with the judge's view of the evidence. Their arguments also fail to appreciate the governing legal principles the judge correctly applied when rejecting plaintiffs' claims. Among those principles are the "legal presumption that 'the testator was of sound mind and competent when . . . execut[ing] the will,'" In re Will of Liebl, 260 N.J. Super. 519, 524 (App. Div. 1992) (quoting Gellert, 5 N.J. at 71), and the law's assumption that "only a very low degree of mental capacity" is required for the valid execution of a will, ibid. (quoting In re Rasnick's Will, 77 N.J. Super. 380, 394 (Essex Cnty. Ct. 1962)). So substantial is the burden of proving a lack of testamentary capacity that plaintiffs chose to voluntarily dismiss their claim that their father lacked testamentary capacity in 2007 at the trial's outset – a circumstance that the now self-represented plaintiffs appear to have disregarded in their arguments in this appeal.

With the dismissal of the lack-of-testamentary claim, the trial focused on plaintiffs' remaining claim that the 2007 Will was the product of defendant's undue influence. In this context, undue influence is defined as the exertion of "mental, moral, or physical" force that destroys the testator's "free will" by preventing the testator "from following the dictates of his or her own mind," accepting instead the "'domination and influence of another.'" In re Estate of Stockdale, 196 N.J. 275, 303 (2008) (quoting In re Neuman, 133 N.J. Eq. 532, 534 (E. & A. 1943)); see also Haynes v. First Nat'l State Bank, 87 N.J. 163, 176 (1981); Gellert, 5 N.J. at 71.

The law imposes on will contestants the burden of demonstrating undue influence, although the law also recognizes this burden may be sustained if the will contestant can show that the one who benefits "stood in a confidential relationship to the testator" and their relationship was accompanied by other "suspicious" circumstances. Stockdale, 196 N.J. at 303. If those elements are demonstrated, the presumption against undue influence is overcome and the burden of proof shifts to the will proponent. Ibid. In that instance, the burden placed on the will proponent requires proof of the absence of influence by a preponderance of the evidence; the higher clear-and-convincing standard is applied when the presumption of undue influence arises from "a professional

conflict of interest on the part of an attorney, coupled with confidential relationships between a testator and the beneficiary as well as the attorney." Haynes, 87 N.J. at 183. A confidential relationship does not come into existence merely because the testator and the proponent are related; as Judge (later Chief Justice) Hughes said for this court in Vezzetti v. Shields, 22 N.J. Super. 397, 405 (App. Div. 1952), "the mere existence of family ties does not create . . . a confidential relationship." See also Est. of Ostlund v. Ostlund, 391 N.J. Super. 390, 401 (App. Div. 2007).

As mentioned earlier, the judge heard testimony from all five siblings, two attorneys, a physician, and a former law enforcement officer. This testimony demonstrated to the trial judge numerous critical things. First, the judge found that when the 2007 Will was executed, decedent was not susceptible to anyone's influence, including defendant's. The judge found decedent to be strong-willed and stubborn, evidenced by, among other things, his approach to a lawsuit pending around the same time, a circumstance that caused division in the family; rightly or wrongly, decedent believed that, except for defendant, his children sided with his deceased wife's relatives in seeking to bar his eventual burial next to her. This prompted decedent not only to hire an attorney to resist the claims

in that other suit but for estate-planning purposes as well, leading to the execution of the 2007 Will.

The judge also found no merit in the claim that defendant was in a confidential relationship with the decedent at the time the 2007 Will was executed. For example, the judge noted that while defendant brought decedent to his attorney's office, she waited outside while decedent and the attorney privately discussed his estate plans. The attorney testified that he saw no reason to question whether the decedent was making free and voluntary decisions. Decedent's physician, who had treated him for many years before and after the time he executed the 2007 Will, similarly testified that decedent was impervious to undue influence at the time.

There was more than ample evidence from which the judge could conclude plaintiffs had not overcome the presumption against undue influence. To be sure, the evidence revealed that defendant looked after decedent as he aged, but there was nothing unusual about that considering she was a nurse and the only sibling still in a close relationship with him. See n.4, below. Some plaintiffs had absolutely no relationship with decedent for many years prior to his death,[4]

---

[4]  All four plaintiffs testified to their estrangement from the decedent for many years prior to his death. Thomas acknowledged he had no contact with his father

a circumstance generated by many things, including their unhappiness with decedent's relationship with another woman after their mother's death and their actual or perceived roles in the suit concerning the location of decedent's eventual burial. For these and other reasons, the judge found no suspicious circumstances even if it could be said that, in 2007, defendant and decedent were in a confidential relationship.

While the disinheriting of four of five children might in a vacuum seem unusual or suspicious in and of itself, the record firmly established that decedent no longer maintained a relationship with those he disinherited. Indeed, this was not suspicious because rifts were not unusual in this family; even defendant had ceased her relationship with decedent for many years following her mother's death, but, unlike her siblings, she renewed her relationship with decedent and cared for him for many years until his death. In that light, it was hardly

---

"from the mid '90s to the date of [his] father's death." Daniel testified he had not seen his father since 2006 when, after many years of having no relationship with him, a visit with his children ended badly. Debra attempted to help her father pay his bills and straighten out his checking account in 2005, but this renewal of their relationship also ended suddenly, and she acknowledged not seeing him after early 2007. Peter testified he had no contact with his father since his mother's funeral in 1985 even though he lived all that time "five blocks" from his father's home; as Peter described it, "[f]ive blocks might as well be China."

surprising or suspicious that decedent chose not to provide for plaintiffs in his last Will.

As noted, plaintiffs' arguments in this appeal consist mainly of an attack on the trial judge. The argument that the judge was not fully attentive is not borne out by the record. There is nothing in the trial transcript that would support or suggest this scurrilous allegation. Plaintiffs' counsel never made such an argument during trial and never sought a mistrial for this or any other reason. And plaintiffs never moved for a new trial or other relief after judgment was entered based on these or any other allegations about how the trial was conducted. Based on our careful review of the record, we are satisfied the able judge thoroughly considered all the evidence presented. His findings and conclusions are fully supported by the record and are entitled to the deference required by the Rova Farms standard of review.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5407-18