**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3370-21

IN THE MATTER OF THE
ESTATE OF SIRAN
BARDIZBANIAN.

_____

Submitted February 13, 2024 – Decided March 5, 2024

Before Judges Whipple, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000212-21.

Richard Joseph Kapner, Esq., PC, attorney for appellant (Richard Joseph Kapner, of counsel and on the brief).

Law Office of Michael J. Sprague, attorneys for respondent (Michael J. Sprague, of counsel and on the brief).

PER CURIAM

Plaintiff Maggie Merjanian appeals from a May 23, 2022 order granting summary judgment to her brother, defendant Garabet Bardizbanian (Gary).[1] As

---

[1] Because certain parties share the same last name, we refer to them by their first names. No disrespect is intended.

a result of the summary judgment orders, the probate judge permitted the 2000 will executed by decedent Siran Bardizbanian (decedent or Siran)[2] to be probated.  We affirm for the thoughtful and cogent reasons expressed by Judge Edward A. Jerejian.

We summarize the facts relevant to Maggie's challenges to Siran's 2000 will.  Siran and her husband, Toros, had four children.[3]  Prior to arriving in the United States sometime in the 1970s, Siran and her family lived in Syria.

In 1991, Toros operated and owned a jewelry store in Manhattan.[4]  At this time, Gary was a full-time college student.  However, at Toros's request, Gary left college to work in the family business.

Siran's family used the same attorney, John McGlade, to handle the family's business dealings and other legal matters.  Over the years, McGlade represented Siran's family in the following legal matters:  Kevork's purchase of a townhome in 1986; a subsequent deed conveying the townhome to Toros; a

---

[2]  Maggie and Gary are Siran's youngest children.

[3]  Siran's two oldest children predeceased her.

[4]  Kevork, the oldest son of Siran and Toros, originally purchased the jewelry business.  Kevork ran the business with Siran's help from 1978 until his death in 1991.  Toros took over the business after his son's death.

A-3370-21

1993 loan and mortgage agreement; the 1994 wills executed by Siran and Toros; and Siran's 2000 will.

At his deposition in 2021, McGlade testified regarding the preparation and execution of the 1994 wills for Siran and Toros and the 2000 will for Siran. According to McGlade, he always assessed a person's competency to make a will before permitting the client to execute a will. McGlade refused to prepare wills for clients who lacked testamentary capacity.

McGlade provided the following undisputed testimony regarding Toros's 1994 will. Toros's 1994 will was properly witnessed and notarized. The will named Siran as the executrix and sole beneficiary of his estate, and named Gary as his alternate representative and sole contingent beneficiary. McGlade testified Toros's 1994 will stated, "I have deliberately made no provision herein for the benefit of my daughter, Margaret Merjanian." According to McGlade, Siran incorporated identical provisions in her 1994 will as in her husband's 1994 will, including the exclusion of Maggie as a beneficiary.

Before Siran and Toros executed their 1994 wills, McGlade met with them. McGlade testified they understood and approved their wills. McGlade was unable to recall if he asked the couple about their decision to disinherit Maggie.

A-3370-21

When his parents executed their 1994 wills, Gary was twenty-four years old. He lacked any involvement in the preparation or execution of his parents' wills.

Toros died on May 12, 2000. Consistent with the provisions in Toros's 1994 will, Siran was appointed executrix of his estate. After her husband's death, Siran retained McGlade to sell the townhome.

McGlade produced his attorney notes from his conversations with Siran in 2000 prior to Siran revising her 1994 will. According to McGlade's notes, Siran's brother accompanied her to an August 21, 2000 meeting with McGlade. Siran told McGlade she wanted to update her will to bequeath her assets "to Gary and [for] Gary to be executor." McGlade testified he and Siran met without Gary present because Siran "sought to leave all to Gary . . . in the will" and requested "[t]hat Maggie be omitted from the will."

In accordance with their discussions, McGlade prepared Siran's 2000 will, which she executed on November 6, 2000. According to McGlade's notes, Siran's friend, Arous Isakhanian, accompanied her to the office when Siran signed the 2000 will. McGlade testified Siran understood the terms of the 2000 will. McGlade's notes never mentioned Gary's presence at any meetings discussing the 1994 wills or the 2000 will.

A-3370-21

Siran died on March 9, 2021.  Gary located Siran's 1994 and 2000 wills, as well as a copy of Toros's 1994 will, in a safe at Siran's home.  Gary also found a letter with Siran's handwriting.  The letter stated "[p]lease give this letter to my [g]randson Richard[5] after my death."  Although this letter was written in Armenian, Gary hired a translation service to translate the letter into English.  In her letter, Siran wrote, "I am going to deprive [Maggie] from this money."[6]

Siran's 2000 will and 1994 will were essentially identical.  Her 2000 will stated, "I am mindful that I also have a daughter, Margaret M[e]rjanian and it is my specific intent not to leave my daughter anything in this [w]ill.  It is not an oversight on my part."

The main dispute between Maggie and Gary regarding the validity of the 2000 will concerned Siran's ability to communicate in English.  In support of their motions for summary judgment, Maggie and Gary submitted conflicting certifications on this issue.

---

[5]  Richard is the son of Siran's deceased daughter.

[6]  Judge Jerejian read the translated letter from Siran to her grandson, Richard, into the record.  We need not repeat the content of the letter except to state it offered reasons why Siran deliberately disinherited Maggie in her 1994 and 2000 wills.

A-3370-21

Maggie presented her own certification in support of summary judgment, as well as certifications from her daughter, Lena; her son, Kevin; Siran's niece, Ari Isakhanian; and Siran's friend, Alice Aghjian.

Maggie alleged Siran's 1994 and 2000 wills were "fake" because "[w]ills are not part of the Armenian culture." She also asserted Gary "started to dominate and control [her] mother's life," "physically threatened" Maggie, and "ordered" Maggie to cease all contact with Siran. According to Maggie's certification, Siran "never learned," "never spoke," and "never understood" English during her lifetime. Maggie further certified Siran "only spoke Armenian, with a touch of Turkish and Arabic" and therefore "could not have made a [w]ill." At her deposition, Maggie testified Siran did not "know how to make [a] will" because Siran "didn't speak English."

The certifications from the individuals proffered on Maggie's behalf similarly claimed Siran only spoke Armenian and never spoke English in their presence.

In addition to his own certification, Gary submitted certifications from Siran's neighbors, Ann Morrison and Dr. Ani Kalayjian; an extended family member, Arous Isakhanian; and Siran's brother, Alex Ghazalian.

In his certification, Gary stated he "did not know that [his] parents were making [their 1994] [w]ills." Gary asserted his statement was supported by McGlade's "notes and . . . testimony[,] [which] clearly indicated that [Gary] played no role in the preparation nor the execution of [his] parents' 1994 [w]ills" or his mother's 2000 will. He further certified that he "was [twenty-four] when [his] parents executed their 1994 [w]ills, . . . [and] [a]t that point in their lives, [his] parents were not dependent on either [Gary] or [his] sister [because] [t]hey lived independently." Gary noted that, "[r]ather than informing [his] mother and [him] of her alleged suspicions of incapacity and undue influence in 2000, [Maggie] chose to lie in the weeds for more than [twenty] years."

The certifications from individuals submitted in support of Gary's motion for summary judgment averred Siran spoke and understood English because she lived in the United States for over forty years. One individual also observed Siran communicating with her health aides in English because the aides did not speak Armenian. Additionally, Siran's Armenian neighbor explained she had a will and "[t]o suggest that Armenians don't make [w]ills [was] utter nonsense."

In her certification, Arous stated she accompanied Siran to McGlade's office to sign the 2000 will. Arous observed Siran's interactions with McGlade, and claimed Siran "was able to discuss the [w]ill with [him] in English" and

"answer his questions." While Arous explained she translated a few words or phrases, Siran "did not require [her] assistance for the great majority." According to Arous, Siran "was a person who knew exactly what she wanted to do. She would not have signed her [w]ill until it reflected her wishes."

In his certification, Alex certified Siran's "English was not perfect, but she never had a problem communicating with her [health] aides when [he] was present." He further noted Siran learned English following her arrival in the United States. Although Siran was more comfortable speaking Armenian, Alex stated she "was able to effectively communicate in English when necessary." He also asserted Siran did not want Maggie to receive any of her assets under the 2000 will. Alex rejected Maggie's accusation that Gary abused Siran. According to Alex, Gary "was a doting son who constantly visited and communicated with Siran. He tended to her needs, paying many of her expenses from his own pocket."

With her summary judgment motion, Maggie provided select medical records for Siran. While the medical records indicated Siran's preferred language as Armenian, the records did not demonstrate any mental or physical decline impacting Siran's ability to make a will.

8

After hearing the arguments of counsel, Judge Jerejian rendered comprehensive findings of fact and conclusions of law on the parties' motions for summary judgment. He denied Maggie's motion to invalidate Siran's 2000 will and granted Gary's motion to admit Siran's 2000 will to probate.

Regarding Maggie's undue influence claim, Judge Jerejian found no evidence of a confidential relationship because "[Gary] [did not] initiate proceedings for the preparation of the [19]94 will. He was barely out of college before the 2000 will. He wasn't present. He didn't participate in the preparation, the execution. There is absolutely nothing that shows up in the notes or anywhere on either side of this case."

Regarding Maggie's claim that Siran lacked testamentary capacity, Judge Jerejian found "[Siran] [did not] have to digest and understand every clause." The judge stated, "[w]hat we are talking about, is, was it her donative intent to do what she did. That is the issue here, not whether it is in English or Armenian, [or whether] she could explain every clause in the will." On this issue, the judge found "there is absolutely no evidence in this case whatsoever that in 1994, or [in] 2000, the decedent lacked testamentary capacity. . . . These wills were made decades before she died. There is nothing here to suggest any mental incapacity. Nothing. Zero."

A-3370-21

Judge Jerejian also addressed whether summary judgment was appropriate, explaining such motions are "designed to avoid trials which would serve no useful purpose and afford deserving litigants immediate relief." Applying this legal standard, the judge denied Maggie's motion for summary judgment to invalidate Siran's 2000 will because it "ha[d] no merit."

Judge Jerejian further explained, the parties' certifications standing alone were not dispositive of the summary judgment issue. The judge focused on the pertinent issue—the circumstances at the time Siran executed her wills. As part of his legal analysis, Judge Jerejian stated Gary did not speak Armenian, which suggested Siran spoke to Gary in English. He also noted Maggie never argued Toros lacked the ability to speak or understand English. Because Maggie did not challenge her father's capacity to speak or understand English, the judge concluded Toros understood his 1994 will, which expressly disinherited Maggie.

Judge Jerejian also rejected Maggie's challenge to Siran's signature on the 2000 will. McGlade testified he and another attorney served as witnesses to the 2000 will and that his secretary served as the notary for the 2000 will.

Based on these fact findings and the applicable law governing will challenges, Judge Jerejian concluded "[t]here [was] no . . . whiff of undue influence or lack of capacity." As a result of the complete lack of evidence, the

10

judge determined "there is no doubt in this [c]ourt's mind that . . . neither the 2000 will or [the 1994] will was a product of undue influence . . . [or] lack of mental capacity." Thus, he found "there [was] no triable issue of fact."

On appeal, Maggie argues Judge Jerejian erred in granting Gary's motion for summary judgment because there were material factual disputes precluding the entry of summary judgment. She further alleges the judge's factual findings that Siran read, spoke, and understood English were unsupported by the record, and, because Siran did not communicate in English, Siran lacked the requisite testamentary capacity to execute her wills. Additionally, Maggie claims Gary exerted undue influence regarding Siran's execution of her wills. Moreover, Maggie contends there was sufficient evidence presented to prove the signature on the 2000 will was not Siran's signature. We reject these arguments and affirm for the reasons expressed by Judge Jerejian in his May 23, 2021 oral decision. We add only the following comments.

"[A] court's duty in probate matters is 'to ascertain and give effect to the probable intention of the testator.'" In re Probate of Alleged Will & Codicil of Macool, 416 N.J. Super. 298, 307 (App. Div. 2010) (quoting Fid. Union Tr. Co. v. Robert, 36 N.J. 561, 564 (1962)). "In attempting to determine the probable intent of the testator . . ., courts must consider the entirety of the will in light of

11

the circumstances surrounding the execution of the will." In re Estate of Gabrellian, 372 N.J. Super. 432, 441 (App. Div. 2004).

Based on our review of the record, Judge Jerejian had ample evidence in the record supporting his conclusion that Siran had the donative intent to disinherit Maggie in the 1994 and 2000 wills. The judge properly found Maggie failed to proffer any evidence that Siran lacked testamentary capacity, Gary exerted undue influence, or Siran did not sign the 2000 will. Notwithstanding the fact that Siran's native language was Armenian, Judge Jerejian found Siran lived and worked in the United States from 1975 until her death. He further found Siran ran a jewelry business in Manhattan, purchased and sold properties in New Jersey, signed bank loan documents, obtained a New Jersey driver's license, and communicated in English to those who did not speak Armenian. Therefore, he concluded Siran sufficiently read, understood, and spoke English to have the requisite donative intent in executing her wills.

On summary judgment, Maggie bore the burden of demonstrating Siran lacked testamentary capacity by clear and convincing evidence. In re Estate of Fisher, 443 N.J. Super. 180, 199 (App. Div. 2015). We agree with Judge Jerejian that Maggie failed to present any evidence that Siran lacked testamentary capacity to execute either the 1994 will or the 2000 will. In fact, Maggie never

challenged Siran's mental or physical capacity. Moreover, the 2000 will was nearly identical to the 1994 wills executed by Toros and Siran, and Maggie presented no evidence that Toros lacked testamentary capacity to execute his 1994 will.

Maggie was similarly required to demonstrate Gary exerted undue influence in the making of Siran's 2000 will by proffering evidence of a confidential relationship between Gary and Siran, and the presence of suspicious circumstances. In re Will Liebl, 260 N.J. Super. 519, 528 (App. Div. 1992).

We agree with Judge Jerejian that Maggie failed to proffer any evidence of undue influence in the making of Siran's 2000 will. There was no evidence that Gary was present when Siran discussed either the 1994 will or the 2000 will with McGlade. To the contrary, McGlade's notes from those meetings indicated Gary was not present in any meeting related to either will. Additionally, McGlade testified he never met with or spoke to Gary.

Nor did Maggie present any evidence to support a finding of suspicious circumstances on this record. Gary lacked any involvement regarding Siran's execution of her wills. More importantly, Siran maintained the same provision disinheriting Maggie in the 2000 will as expressed in Siran's 1994 will. Maggie

13

failed to establish Gary had any involvement, let alone exerted undue influence, in the making of Siran's wills.

Having reviewed the record, we are satisfied Maggie's proofs challenging Siran's 2000 will were insufficient to establish by way of clear and convincing evidence a lack of donative intent, particularly in light of the uncontroverted evidence presented by McGlade who represented both Toros and Siran in various legal matters over the years.

To the extent we have not addressed any of Maggie's remaining arguments, we determine the arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION